NORTHWESTERN SCHOOL CORPORA-TION OF HENRY COUNTY BOARD OF SCHOOL TRUSTEES, Defendant-Appellant,

v.

INDIANA EDUCATIONAL EMPLOY-MENT RELATIONS BOARD, Raymond L. Green, as Chairman, Defendant-Appellee,

Grace Ballard, in her Individual Capacity and in her Official Capacity as the President of the Northwestern Consolidated Classroom Teachers Association, Plaintiffs-Appellees.

No. 29A02-8801-CV-33.

Court of Appeals of Indiana, First District.

Oct. 24, 1988.

Rehearing Denied Dec. 19, 1988.

Transfer Denied Jan. 9, 1989.

J. Alton Taylor, New Castle, for defendant-appellant.

Richard J. Darko, Richard S. Pitts, Lowe Gray Steele & Hoffman, Indianapolis, for plaintiffs-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

School Board Corporation appeals decision in favor of Teachers Association that School Board Corporation had committed an unfair labor practice by refusing to bargain with teachers concerning certain calendar items. We affirm.

## FACTS

In order to establish each school year calendar, the Northwestern Consolidated Classroom Teachers Association (Teachers) commonly proposed a calendar to the Northwestern School Corporation of Henry County Board of School Trustees (School Corporation). After some negotiation, the School Board would adopt a calendar. During collective bargaining with Teachers concerning contracts for the 1982–83 and 1983–84 school years, the School Corporation refused to negotiate concerning a calendar and stated that the calendar was not a mandatory subject for bargaining. On

June 21, 1983, the Teachers filed a complaint with the Indiana Education Employment Relations Board (IEERB) alleging that the School Corporation's failure to bargain the school calendar constituted an unfair labor practice. On October 11, 1983, the IEERB hearing Examiner concluded that a 1972–73 agreement between the Teachers and the School Corporation included a school calendar and that, therefore, calendar was a mandatory bargaining item and the School Board committed an unfair labor practice when it refused to bargain calendar for the 1982–84 agreement. However, the IEERB subsequently dismissed the Teachers' complaint holding that the Teachers had failed to carry their burden of proof to show which specific calendar items were subject to mandatory bargaining. The IEERB concluded that the Teachers had failed to establish that the School Corporation had engaged in an unfair labor practice.

The Teachers petitioned for judicial review of the IEERB order, and on December 3, 1985, the trial court retained jurisdiction but remanded the case to the IEERB for a determination of whether and to what extent calendar was included in the 1972–73 agreement, and whether an unfair practice had been committed. Following stipulations by both sides to exhibits and facts regarding calendar negotiations, the IEERB Hearing Examiner filed a report with revised findings and conclusions. The Examiner found that the Teachers had successfully negotiated "record days" into the school calendar for 1972–73, that the parties had entered into an agreement with respect to the 1972–73 calendar, and that a "grandfathered" agreement existed which made certain calendar items mandatory subjects of bargaining. The Examiner concluded that the School Corporation's refusal to bargain certain calendar items constituted an unfair labor practice. Both parties filed exceptions to the Hearing Examiner's report. The Teachers contended that the Examiner had failed to find an unfair practice based on the School Corporation's refusal to bargain *all* the items set forth in the 1972–73 negotiated calendar. The School Corporation argued that the entire school calendar was a non-negotiable, managerial prerogative.

The IEERB reviewed and adopted the Hearing Examiner's findings and conclusions, amended them, and held that some of the calendar items were not included in the unfair labor practice finding because those items were within the regulatory power of the School Corporation and could not be within the scope of bargaining under the "grandfather" provision. The IEERB ordered the School Corporation to cease and desist from refusing to bargain with the Teachers regarding five (5) specific calendar items. Thereafter the case was returned to the trial court which upheld the IEERB order. Both parties filed motions to correct error, and both filed praecipes. Following a pre-appeal conference, the School Corporation was designated as the appellant and Teachers as the appellee.

## ISSUES

1. Did the Teachers and the School Corporation have a 1972–73 agreement regarding calendar items which fits within the "grandfather" clause in Indiana Code section 20–7.5–1–5?

2. Did the IEERB properly find that although certain calendar items fit within the "grandfather" clause, they also fell within the School Corporation's exclusive managerial responsibility and, therefore, were not proper subjects for collective bargaining?

## DISCUSSION AND DECISION

*Issue One*

 The School Corporation argues, and we agree, that whenever possible in construing a statute the court should defer to legislative intent. In determining legislative intent, we must examine the entire statute. *Lincoln Nat'l Bank v. Review Bd. of the Indiana Employment Security Div.* (1983), Ind.App., 446 N.E.2d 1337, 1339, *trans. denied.* In the absence of a contrary indication, unambiguous words and phrases are given their plain, ordinary meaning. *Brook v. State* (1983), Ind.App.,

448 N.E.2d 1249, 1252. The statute in question provides, in pertinent part:

"A school employer shall discuss with the exclusive representative of certificated employees, and may but shall not be required to bargain collectively, negotiate or enter into a written contract concerning or be subject to or enter into impasse procedures on the following matters: working conditions, other than those provided in section 4 [20–7.5–1–4]; curriculum development and revision; textbook selection; teaching methods; selection, assignment or promotion of personnel; student discipline; expulsion or supervision of students; pupil-teacher ratio; class size or budget appropriations: *Provided, however, That any items included in the 1972–1973 agreements between any employer school corporation and the employee organization shall continue to be bargainable.*"

Ind.Code § 20–7.5–1–5(a) (emphasis added). The School Corporation argues that the grandfather clause (underlined portion) of the statute requires an application of the doctrine *ejusdem generis*. We disagree. "Under the rule of 'ejusdem generis', where words of a specific or limited signification are followed by general words of more comprehensive import, the general words are construed to embrace only such things as are of like kind or class with those designated by the specific words, unless an intention to the contrary is clearly expressed." 26 I.L.E. *Statutes* § 118 (1960). Application of the doctrine is not mandatory; the rule exists simply to aid the court in determining the intended meaning of a statute, especially where vagueness is claimed to exist. *Id.* We do not believe the legislature intended by adding a grandfather clause after the list of discussable items to limit the applicability of the grandfather clause to the items specifically listed. We decline to apply the doctrine of *ejusdem generis*, rather, we give the phrase "any items" its plain, ordinary meaning.

∎ We next consider the meaning of the term "agreement" in the grandfather clause. The School Corporation argues

that the legislature meant that only those items included in written collective bargaining agreements in 1972–73 should continue to be bargainable. Again, we decline to adopt the School Corporation's narrow interpretation of statutory language. In construing legislation, we employ a reasonable interpretation of statutory language. *Eastbrook Community Schools Corp. v. Indiana Educ. Employment Relations Bd.* (1983), Ind.App., 446 N.E.2d 1007, 1012, *reh. denied* 450 N.E.2d 1006, *trans. denied.* Words are to be given their usual and ordinary meaning. *Evansville–Vanderburgh School Corp. v. Roberts* (1980), 273 Ind. 449, 452, 405 N.E.2d 895, 898. The grandfather clause provides that "any items included in the 1972–73 agreements between any employer school corporation and the employee organization shall continue to be bargainable." Ind.Code § 20–7.5–1–5(a). Given its usual, ordinary meaning, the statutory language does not require an agreement to be in writing in order to fit within the grandfather clause. We compare the legislature's language in Indiana Code section 20–7.5–1–2(n) (emphasis added):

" 'Bargain collectively' means the performance of the mutual obligation ... to meet ... negotiate ... and to execute a *written contract incorporating any agreement* relating to such matters...."

From this section we infer that the legislature considered an agreement to be something "less" than a written contract, since an agreement could be incorporated within a written contract. Furthermore, had the legislature intended to include only written collective bargaining agreements in the grandfather clause, it could have so stated in the more specific language used in § 20–7.5–1–2(n). We will not insert the necessity of a writing where the legislature did not require it.

∎ Thus, in order to fit bargainable items within the grandfather clause, the Teachers need establish only that the items were included in a 1972–73 agreement between the School Corporation and the Teachers. At a minimum, an agreement requires a meeting of the minds of two

parties and mutual intent regarding their respective rights and duties. Under the law of contracts, the parties' intention is a factual matter to be determined by the finder of fact from all the circumstances. *Continental Grain Co. v. Followell* (1985), Ind.App., 475 N.E.2d 318, 321, *trans. denied.* In an administrative proceeding the board or agency, not the court, determines factual issues. *Evansville–Vanderburgh*, 273 Ind. at 451, 405 N.E.2d at 897, quoting *Indiana Educ. Employment Relations Bd. v. Board of School Trustees* (1978), 176 Ind.App. 680, 377 N.E.2d 414. If the record contains any substantial evidence to support the board or agency's finding, the court may not disturb the decision. *Id.* The record in this case contained minutes of the School Board meeting for January 24, 1972, which included the following statement: "The 1972–73 school calendar was finalized after a discussion with members of the C.T.A. [Classroom Teachers Association]." Exhibit 18. The C.T.A. News Bulletin which contained the 1972–73 school calendar also contained this information: "The 1972–73 School Calendar has been approved by the school board at its January 24, 1972 meeting. Frank Bienas and Rosemary Hipskind are the two C.T.A. officers who worked on this project." Exhibit 14. Furthermore, a memo from the school superintendent to teachers and principals was issued on May 18, 1973, and explained:

"Due to a misunderstanding on my part I issued a directive regarding the presence of teachers on May 29, 1973.

"Please disregard this directive and, as per agreement with teachers at the time the present calendar was designed, any teacher who has a need to complete his or her work early may make arrangements with the building principal to work in the building on Friday evening or on Saturday."

Exhibit 20.

In addition, various teachers made the following statements about the way in which the 1972–73 school calendar was produced. "We came up with a calendar and then we proposed it to the Board. And the significant changes would occur, and then we'd agree with the team as we would with salary on what was acceptable calendar.... We would discuss, and then we'd go back out in the other room, and they would discuss, and then we'd come back together and come to an agreement." Record at 131–32. "I remember salary and calendar being bargained ... basically the teachers would submit their proposal to the negotiating committee and the negotiating committee would present it to the Board and, of course, they would go back and forth." Record at 148. "The association had a professional negotiating team which would meet with the superintendent, and our Board, and after an agreement was reached there ... it would be brought back to the teachers for ratification...." Record at 164. In our view, there was substantial evidence presented to the Hearing Examiner from which the board could have found that an agreement existed between the Teachers and School Corporation for the 1972–73 school year, and that the school calendar was an item included therein. By refusing to bargain the school calendar for 1982–83 and 1983–84, the School Corporation committed an unfair labor practice because the 1972–73 agreement fit within the grandfather provision of Ind. Code § 20–7.5–1–5(a).

*Issue Two*

■ The parties dispute also the IEERB's finding that certain calendar items, although covered by the 1972–73 grandfather agreement, are not proper subjects for bargaining because they involve managerial decisions which are part of the state sovereignty granted to school boards. We agree with the Teachers that "any items" in the grandfather clause should be given its plain, ordinary meaning. However, we cannot interpret statutory language in isolation. The meaning assigned to words is subject to interpretation, and when alternate meanings are available it would seem illogical to attach a meaning which deprives the statute being interpreted of its purpose. *City of Evansville v. International Ass'n of Fire Fighters, Local 357* (1987), Ind., 516 N.E.2d 57, 59. Rather, we apply the meaning which is

compatible with the letter and intent of the entire statute. *Id.* To compel a school board to negotiate a contract which includes provisions in conflict with school employer rights as defined in Ind.Code § 20–7.5–1–6(b) would contravene Ind.Code section 20–7.5–1–3. We have held that school calendar is a matter of educational policy and, therefore, is a non-negotiable, managerial decision. *Eastbrook,* 446 N.E. 2d at 1013. We concluded in *Eastbrook* that although the school calendar affected the days and hours during which teachers worked, the calendar's effect on students and other public interests outweighed the private interests of teachers. *Id.*

Clearly, absent the grandfather provision, calendar could not be a proper subject of bargaining. In the case at bar, however, we are called upon to decide the narrow question of whether the School Corporation had a duty to bargain with the Teachers regarding calendar items which had previously been bargained in the 1972–73 agreement. We hold that with certain exceptions, the School Corporation did have such a duty.

The Hearing Examiner found that the following calendar items had been bargained in the 1972–73 agreement:

"(a) The initial reporting date for teachers;

"(b) Student enrollment half-day;

"(c) The date of the first day of school;

"(d) The ability of teachers to reschedule duties from one day to another;

"(e) The starting and ending days of holidays and recesses (vacations);

"(f) The total number of instructional days in the school year;

"(g) The total number of days teachers were required to report for work;

"(h) The closing of schools for I.S.T.A. Conference;

"(i) The dates and use of dates when no students attended but teachers reported for work;

"(j) The length of grading periods;

"(k) The dates when grades were due;

"(*l*) The date of the last day of student attendance;

"(m) The date of Band Day;

"(n) The dates when students would be in school for one-half day and teachers would attend for a full day;

"(*o*) The use of the days in which student's would be in school for one-half day but teachers would attend for a full day;

"(p) The existence and dates of Teacher Record Days;

"(q) Scheduling of breaks and holiday recesses;

"(r) Existence and scheduling of Teacher Days;

"(s) Existence and scheduling of In-Service Days; and

"(t) The date and use of the last day of teacher attendance."

Record at 508–09. The IEERB found that the School Corporation had, in fact, bargained with the Teachers in 1982–84 regarding some of those items, and determined that the following items could not be made bargainable by the grandfather clause because they fell within the regulatory power granted to school boards:

"a. Student enrollment half-day;

"b. The date of the first day of school;

"c. The starting and ending days of holidays and holiday recesses (vacations);

"d. The closing of schools for an I.S.T. A. Conference;

"e. The date of the last day of student attendance;

"f. The date of Band Day;

"g. Scheduling of breaks and of holiday recesses;

"h. The existence and scheduling of Teacher Days (to the extent they are also student days); and

"i. The use of the days in which students would be in school for one-half day but teachers would attend for a full day (the portion when students are present).

Record at 511. Thus, the IEERB concluded that the School Corporation committed an unfair labor practice only to the extent that it refused to bargain the following calendar items:

"a. The initial reporting date for teachers;

"b. The dates when no students attended but teachers reported for work;

"c. The length of the grading periods;

"d. The dates when students would be in school for one-half day but teachers would attend for a full day (the portion when teachers but not students, are present must be bargained); and

"e. The existence and scheduling of Teacher Days (to the extent they are not also student days)."

Record at 512. We agree with the IEERB's conclusion that items "a" through "e" set forth directly above were mandatory subjects of bargaining in 1982–84 because they did not infringe upon the school board's exclusive power *and* because they fit within the grandfather clause provision. We believe the IEERB and the trial court properly applied the grandfather provision in light of the *Eastbrook* decision. Although as a general rule, calendar is not a proper subject of bargaining, calendar items which were bargained as part of a 1972–73 agreement and which do not infringe upon a school board's exclusive managerial power remain bargainable under the grandfather clause in Ind.Code § 20–7.5–1–5(a).

AFFIRMED.

NEAL and STATON, JJ., concur.