The **BOARD OF SCHOOL TRUSTEES OF THE GARY COMMUNITY SCHOOL CORPORATION**, Appellant,

v.

**INDIANA EDUCATION EMPLOYMENT RELATIONS BOARD, Raymond L. Green, as Chairman of the Indiana Education Employment Relations Board and Sandra Irons, as President of the Gary Teachers Union Local No. 4, AFT, and Gary Teachers Union Local No. 4 AFT, Appellees.**

No. 41A01–8811–CV–384.

Court of Appeals of Indiana, First District.

Sept. 18, 1989.

 

Charles R. Rubright, Andrew W. Hull, Bose McKinney & Evans, Indianapolis, for appellant.

Barry A. Macey, Nora L. Macey, Janice E. Kreuscher, Segal and Macey, Indianapolis, for appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

The Board of School Trustees of the Gary Community School Corporation (School Corporation) appeals the decision of the trial court upholding the findings of the Indiana Education Employment Relations Board (IEERB) in favor of Sandra Irons in her capacity as President of the Gary Teachers Union Local No. 4, A.F.T. (Federation), and the Federation itself. The trial court upheld the IEERB's conclusion that the School Corporation had committed an unfair labor practice in implementing an evaluation procedure which ran contrary to longstanding policy concerning the effects of supervisor observation and evaluation of teachers on the supervisor/teacher relationship without bargaining for such changes. We affirm.

## FACTS

On September 7, 1983, Sandra Irons and the Federation filed a complaint with the IEERB alleging that the School Corporation had engaged in an unfair labor practice by unilaterally changing the conditions of employment established by the existing collective bargaining agreement in implementing an observation and evaluation program for teachers as part of a newly introduced teaching strategy. The Federation claimed that as the result of a 1967 dispute concerning a memo mandating that supervisors observe teachers and produce written evaluations of the teachers' abilities, the following provision was included in the collective bargaining agreement:

"ARTICLE XXXVIII

LOCAL CONDITIONS AND PRACTICES

A. Written board and personnel policy now in existence covering established practices of employees covered by this Agreement and/or established local working conditions or practices in effect as of the date of this Agreement which are not inconsistent with this Agreement shall not be changed without agreement of the parties.

B. The established local working conditions or practices clause of this Agreement shall be interpreted to include the meaning that no provision of this Agreement shall permit changes in established working conditions or practices in any given building except when those changes constitute an improvement in the working conditions and practices in effect in the building as of the date of this Agreement."

In March of 1971, this clause provided the basis for a finding in favor of the Federation on a grievance filed after the School Corporation again circulated a memo indicating that instructional supervisors would be responsible for providing copies of written evaluations of teachers to the Principal and Director of Instruction.

In 1982, the School Corporation decided to institute a new program in an effort to improve classroom instruction. The program combined the educational theories propounded by Madeline Hunter and the Blooms. In the fall of 1982, this program was implemented. In an effort to educate the teachers about the new teaching strategies, group meetings were held at each school after the teachers were instructed on the new teaching methods, and individual supervisors visited each teacher's classroom to observe how well the teacher was

adapting to the new program. After each observation session, the supervisor prepared two written reports which contained the supervisor's evaluation of the teacher's performance. One of the reports contained an evaluation scale of "1" through "5", under which "5" meant "distinctly below average" and "1" meant "superior". The supervisor discussed the completed reports with the teachers, although copies of the reports generally were not made available to the teachers. While hundreds of teachers had been observed prior to early January of 1984, only two (2) or three (3) teachers had received copies of their evaluation reports prior to that time. These reports ultimately were sent to the Director of Secondary Education. Copies of the reports were not sent to the principals, who are considered the primary evaluator of teachers for tenure and termination purposes.

In November of 1982, the Federation objected to supervisors' written evaluations. The Federation filed a grievance which went to arbitration. The arbitrator found in favor of the Federation, finding that the new teaching strategy constituted a substantive departure from the policies articulated in the collective bargaining agreement as protected by Article XXXVIII. The School Corporation informed the Federation that it would not abide by the arbitrator's decision. The Federation then filed suit with the IEERB claiming that the School Corporation had engaged in an unfair practice in unilaterally changing the conditions of employment as established in the collective bargaining agreement. On April 26, 1984, a Hearing Examiner found in favor of the Federation. The Hearing Examiner's Findings of Fact, Conclusions of Law and Recommended Order were adopted by the IEERB on September 27, 1984. The Hearing Examiner found that the role of supervisors in connection with the new teaching strategy unilaterally implemented by the School Corporation was subject to and within the scope of the Local Conditions and Practices clause, and therefore, pursuant to the "grandfather" provi-

sions of § 5(a) of the Collective Bargaining Act (the Act),[1] the role of the supervisor was a mandatory subject of bargaining. Therefore, the School Corporation's unilateral altering of the supervisors' role constituted an unfair labor practice.

The School Corporation filed a petition for judicial review pursuant to the Administrative Adjudication Act[2] seeking to overturn the IEERB decision. The trial court denied the School Corporation's petition on July 7, 1988, and ordered that the IEERB decision be enforced. From this decision, the School Corporation now appeals.

### ISSUES

1. Did the trial court err in holding that the IEERB properly exercised its jurisdiction in determining whether or not the School Corporation's actions constituted a unilateral change in a mandatory bargaining subject and, hence, an unfair practice under the Collective Bargaining Act?

2. Did the trial court err in upholding the IEERB's determination that the prohibition against supervisors conducting written evaluations of teachers served to maintain the supervisor/teacher relationship, and was an agreed upon term constituting a mandatory subject of bargaining?

3. Did the trial court err in upholding the IEERB's determination that the School Corporation's unilateral implementation of a new teaching methodology, including written evaluations of teacher performance by the teachers' supervisors, violated past practices so as to constitute an unfair practice under the Act?

### DISCUSSION AND DECISION

Appeals from the IEERB are governed by the Administrative Adjudication Act. Indiana Code section 4-22-1-1, *et seq.; Easterbrook Community Schools Corp. v. IEERB* (1983), Ind.App., 446 N.E.2d 1007, 1010, *trans. denied.* On appeal from an administrative agency decision the Court of Appeals will consider whether the agency

---

1. Indiana Code section 20-7.5-1-1 *et seq.*

2. Indiana Code section 4-22-1-1 *et seq.*

had jurisdiction over the matter, and whether the agency determination was made in accordance with proper legal procedures, was based upon substantial evidence, and did not violate any constitutional or legal principles. *Easterbrook*, 446 N.E.2d at 1010. Furthermore, as a reviewing court we must give deference to the expertise of the administrative body. *City of Greenwood v. Dowler* (1986), Ind.App., 492 N.E.2d 1081, 1085.

*Issue One*

■ The School Corporation first contends that the IEERB lacked jurisdiction over the Federation's claim. This contention is based on the School Corporation's mischaracterization of the present action. The School Corporation asserts that the Federation's claim involves, "a contract violation unaccompanied by an unfair practice." Appellant's brief at 47. The School Corporation then notes that disputes involving contract interpretation and enforcement are generally held to be outside the jurisdictional mandate of the IEERB. However, the School Corporation fails to note that under § 7(a)(5) [3] of the Collective Bargaining Act a school employer's refusal to bargain about mandatory subjects constitutes an unfair practice, and that § 11 [4] of the Act vests the IEERB with the authority to remedy such practices. In the present case, the Federation objected to the School Corporation's unilateral change in a practice which had become a mandatory bargaining subject through the mechanism of the Act's "grandfather" clause.[5] As stated in *Easterbrook Community Schools*, 446 N.E.2d 1007, 1010:

> "[T]he IEERB need not determine, as a prerequisite to establishing its jurisdiction over the dispute that the school employer did in fact commit an unfair labor practice. The legislature has vested the IEERB with the authority to resolve labor disputes involving school employers and their certified employees."

In the present case, the Federation accused the School Corporation of committing an unfair labor practice in unilaterally changing a practice which was a mandatory bargaining subject. The IEERB was well within its jurisdictional limits in deciding such a controversy.

*Issue Two*

The School Corporation next contends that the trial court erred in upholding the IEERB's determination that the prohibition against supervisors conducting written evaluations of teachers served to maintain the supervisor/teacher relationship, and was an agreed upon term constituting a mandatory subject of bargaining. The School Corporation bases this contention on several factors. First, the School Corporation claims that no agreement prohibiting supervisors from making written observations of teachers was included in the 1972–73 collective bargaining agreement and that, therefore, the clause could not be considered "grandfathered" pursuant to I.C. 20–7.5–1–5(a) into the present collective bargaining agreement.[6] The School Corporation also claims that if such prohibition is found to exist in the 1972–73 agreement, it appears as the result of an arbitrator's award and not as the result of a negotiated agreement and therefore, cannot be considered "grandfathered" into the collective bargaining agreement. Finally, the School Corporation claims that the prohibition against written evaluations of teachers by supervisors cannot be considered part of the collective bargaining agreement because the clause inhibits the development of new curricular and teaching techniques and, therefore, denies the School Corporation the authority to effectively administer management matters in violation of Indiana Code section 20–7.5–1–6(b). We

---

**3.** Indiana Code section 20–7.5–1–7(a)(5).

**4.** Indiana Code section 20–7.5–1–11.

**5.** See, Indiana Code section 20–7.5–1–5(a).

**6.** Under the Act's "grandfather clause," items which are not delineated as mandatory subjects

of bargaining under the present statutory scheme, but which were made a part of the 1972–73 collective bargaining agreement, retain their status as mandatory subjects of bargaining.

will discuss each of the School Corporation's contentions separately.

Under the Collective Bargaining Act, items are made mandatory subjects of bargaining in one of two ways. I.C. 20–7.5–1–4 provides that "salary, wages, hours, and salary and wage related fringe benefits," shall be considered a mandatory subjects of bargaining. · I.C. 20–7.5–1–5(a) states in pertinent part that, "any item included in 1972–73 agreements between any employer school corporation and the employee organization shall continue to be bargainable." Thus, any subjects on which the parties had an agreement in 1972–73 are considered mandatory subjects of bargaining in addition to those subjects listed in I.C. 20–7.5–1–4. The School Corporation claims, and the Federation concedes, that the teacher evaluation controversy did not involve a subject expressly stated to be a mandatory subject of bargaining in I.C. 20–7.5–1–4. However, the School Corporation also claims, and here the Federation disagrees, that the 1972–73 collective bargaining agreement did not contain a prohibition against supervisors conducting written evaluations of teachers.

The 1972–73 collective bargaining agreement pertinent to the present dispute contained the following clause:

"ARTICLE XXXV

LOCAL CONDITIONS AND PRACTICES

A. Written Board and personnel policy now in existence covering established practices of employees covered by this Agreement and/or established local working conditions or practices in effect as of the date of this Agreement which are not inconsistent with this Agreement shall not be changed without agreement of the parties.

B. The established local working conditions or practices clause of this Agreement shall be interpreted to include the meaning that no provision of this Agreement shall permit changes in established working conditions or practices in any given building except when those changes constitute an improvement in the working conditions and practices in effect in the building as of the date of this Agreement."

Record at 341. This clause was first added to the collective bargaining agreement as the result of a 1967 dispute concerning the evaluation of teachers by instructional supervisors. The local conditions and practices clause was added in an effort to reinstate a non-evaluative, cooperative teacher-supervisor relationship. The clause added in 1967 remained a part of the collective bargaining agreement through 1972–73 and continues to be included in the bargaining agreement between the parties to this appeal. In 1971, an arbitrator interpreted this clause to proscribe instructional supervisors from making written evaluations of teachers. Despite this interpretation, no change in the clause resulted when the collective bargaining agreement was subsequently renegotiated.

■ The School Corporation claims that the local conditions and practices clause is ambiguous, and notes that the construction of a contract is a question of law to be decided by the court. The School Corporation then claims that the evidence before the court is totally devoid of any indication that the parties intended the local conditions and practices clause to prohibit anything but the supervisor's formal evaluation of teachers for *purposes* of *retention or termination*. We disagree.

The language of the clause itself is not ambiguous. Further, if we assume, without deciding, that an ambiguity arises by virtue of the references made in the clause to extrinsic facts and procedures, the determination of those facts and procedures is a question of fact for the IEERB. *Cf; Fardy v. Physicians Health Rehabilitation Serv's Inc.* (1988), Ind.App., 529 N.E.2d 879, 884. In an administrative proceeding, the board, not the court, determines the factual issues. *Northwestern School Corp. v. IEERB* (1988), Ind.App., 529 N.E.2d 847, 851, *trans. denied.* If the board's finding is supported by substantial evidence, the board's determination will not be disturbed on appeal. *Id.* In the present

case, the evidence indicates that the prohibition against instructional supervisors making written evaluations of teachers was instituted in an effort to maintain the cooperative relationship between teachers and instructional supervisors. While it is true that past violations of this prohibition included an added aggravating element in that the written reports were sent to an individual having the power of retention and termination over the teacher, the fact that the evaluations complained of in the present case were not forwarded to such an individual is not enough to overturn the IEERB's determination. The evidence supports the conclusion that it was the act of producing a written evaluation that subverted the cooperative teacher/supervisor relationship, rather than the forwarding of the written evaluation to individuals having the power of retention and termination over the teachers. The factual conclusion reached by the IEERB is supported by substantial evidence. The 1971–72 agreement did contain a prohibition against instructional supervisors making written evaluations of teachers.

The School Corporation next claims that even if the prohibition is found to exist in the 1972–73 agreement, the clause appears as the result of an arbitrator's award, not as the result of a negotiated agreement, and therefore, cannot be considered "grandfathered" into the present collective bargaining agreement. The School Corporation is mistaken for two reasons.

First, the prohibition results from more than the 1971 arbitration award; the history of the local conditions and practices clause indicates that the very existence of the clause was the result of the 1967 dispute concerning a memorandum requiring instructional supervisors to make written evaluation of teachers. The teachers objected to this procedure and the memorandum was withdrawn. Subsequently the local conditions and practices clause was made part of the collective bargaining agreement in an effort to forestall the school corporation from tampering with the teacher/supervisor relationship without bargaining for such changes. The clause was adopted in all subsequent collective bargaining agreements including the critical 1972–73 agreement and the agreement pertinent to this dispute. The 1971 arbitration award did not "amend, add to, subtract from or supplement provisions of the contract," but rather applied the contract language in accordance with the parties' intent. See Indiana Code section 20–7.5–1–4. Therefore, the School Corporation's allegations in this regard are without merit.

Secondly, contrary to the School Corporation's interpretation, *Northwestern School* does not stand for the proposition that in order for a clause to be "grandfathered" it must be the result of a negotiated agreement. In *Northwestern School* this court stated:

> "[I]n order to fit bargainable items within the grandfather clause, the Teachers need establish only that the items were included in a 1972–73 agreement between the school corporation and the Teachers. At a minimum, an agreement requires a meeting of the minds of two parties and mutual intent regarding their respective rights and duties. Under the law of contracts, the parties' intention is a factual matter to be determined by the finder of fact from all the circumstances. In an administrative proceeding the board or agency, not the court, determines factual issues. If the record contains any substantial evidence to support the board or agency's finding, the court may not disturb the decision." [citations omitted.]

*Northwestern School*, 529 N.E.2d at 850–51. As stated previously in this opinion, the evidence in the present case clearly supports the board's finding that the 1972–73 collective bargaining agreement included an agreement prohibiting instructional supervisors from making written evaluations of teachers. Therefore, the prohibition was properly considered "grandfathered" into the subsequent collective bargaining agreements.

■ The School Corporation also claims that the prohibition against written evaluations of teachers by supervisors cannot be considered part of the collective bargaining agreement because the clause inhibits the development of new curricula and teaching

techniques, and therefore, denies the School Corporation the authority to effectively administer management matters. According to the School Corporation the IEERB's interpretation of the local conditions and practices clause represents an illegal delegation of the School Corporation's responsibility and authority. In support of this contention the School Corporation cites to the following language contained in I.C. 20-7.5-1-3: "No contract may include provisions in conflict with ... (c) school employer rights as defined in Section 6(b) of this chapter." I.C. 20-7.5-1-6(b) defines the rights of school employers as follows:

"(b) School employers shall have the responsibility and authority to manage and direct in behalf of the public the operations and activities of the school corporation to the full extent authorized by law. Such responsibility and activity shall include but not be limited to the right of the school employer to:

(1) direct the work of its employees;

(2) establish policy;

(3) hire, promote, demote, transfer, assign, and retain employees;

(4) suspend or discharge its employees in accordance with applicable law;

(5) maintain the efficiency of school operations;

(6) relieve its employees from duties because of lack of work or other legitimate reason;

(7) take actions necessary to carry out the mission of the public schools as provided by law."

The School Corporation claims that the IEERB's interpretation of the local conditions and practices clause runs afoul of sections (1), (2) and (5) of this statute. Citing *Northwestern School,* the School Corporation correctly notes that only those items which do not infringe upon a school board's exclusive managerial power will remain bargainable under the grandfather clause. 529 N.E.2d at 853.

However, the Supreme Court of Indiana has held on a prior occasion that the imposition of a teacher evaluation plan constituted a "working condition." *Evansville–*

*Vanderburgh School Corp. v. Roberts* (1980), 273 Ind. 449, 453, 405 N.E.2d 895, 898–99. The Supreme Court stated:

"We believe the teacher evaluation in issue is indeed within the plain and ordinary meaning of 'working conditions.' The 'philosophy' of the plan is to maintain high teacher competence by means of self evaluation forms, classroom observations by 'evaluators,' and an evaluation conference ... We believe these factors significantly touch and concern the everyday activities of school teachers and, therefore, are within the ordinary understanding of 'working conditions.'"

*Id.* While the evaluations made in *Evansville–Vanderburgh Schools* could result in a change of assignment or dismissal and the School Corporation herein states that the evaluations undertaken as a part of the Bloom Taxonomy could have no such effect, we find this distinction to be of little import in determining the question presently before this court. Whether or not the evaluations were meant to be used in retention and termination considerations, the evaluation process still greatly affects the teaching environment by altering the relationship between instructional supervisors and teachers. Therefore we hold that the imposition of the written evaluation process constituted a change in working conditions. Furthermore, we find the Supreme Court's ruling in *Evansville–Vanderburgh Schools* to be indicative of the fact that bargaining over the imposition of a plan including written teacher evaluations made by instructional supervisors would not unduly infringe upon the responsibilities and authority of the School Corporation. *Also see Fort Wayne Educ. Ass'n Inc. v. Goetz* (1983), Ind.App., 443 N.E.2d 364, 370. ("[O]ne of the mandatory subjects of discussion which *may* be bargained, is working conditions.") (Emphasis in the original). The School Corporation is not barred from instituting the Bloom Taxonomy absent negotiation with the Federation, only from altering the well established teacher/supervisor relationship absent a bargained resolution of the issue. The School Corporation may, in its efforts to improve

the teaching methods used in the Gary schools, adopt the policies of Madeline Hunter and Bloom's Taxonomy, and may direct its teachers to follow this program; the School Corporation simply may not abandon well established practices consistently bargained for in doing so.

*Issue Three*

The School Corporation's final claim is that the institution of a teaching method that required instructional supervisors to make written evaluations of teachers did not violate past practices where those evaluations were not used for retention or termination purposes. We disagree.

As stated previously in this opinion, the fact that the written evaluations which are the subject of the present dispute were not used for retention or termination purposes is not enough to overturn the IEERB's determination. The evidence demonstrates that the local customs and practices clause was added in 1967 in an effort to prevent the teacher/supervisor relationship from being altered adversely. The clause has been a part of every negotiated collective bargaining agreement since. The evidence supports the conclusion that it was the making of a written evaluation that caused friction in the teacher/supervisor relationship, not the forwarding of the evaluation to the principal or other individuals having the power of retention and termination. Therefore, the trial court did not err in affirming the IEERB's determination that the School Corporation violated a past practice protected under the collective bargaining agreement, and therefore committed an unfair practice in instituting a program requiring instructional supervisors to make written evaluations of teachers without bargaining for such a change.

Affirmed.

BAKER and MILLER, JJ., concur.