**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANTS:

**ERIC M. HYLTON**
**JAMES B. CHAPMAN, II**
Benesch Friedlander Coplan &
Aronoff, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**HUDNALL A. PFEIFFER**
**JON LARAMORE**
**JOHANE J. DOMERSANT**
Baker & Daniels, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| INDIANAPOLIS EDUCATION ASSOCIATION And PRESIDENT ELDEN WOLTING, | ) ) ) | |
| Appellants, | ) ) | |
| vs. | ) ) | No.  49A02-1101-PL-27 |
| INDIANAPOLIS PUBLIC SCHOOLS, | ) ) ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Judge
Cause No.  49D02-0907-PL-34845

**January 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

Indianapolis Education Association and its president, Elden Wolting, (collectively "IEA") appeal the trial court's order setting aside the Indiana Education Employment Relations Board's ("IEERB") decision that Indianapolis Public School ("IPS") had engaged in an unfair labor practice when IPS failed to collectively bargain the addition of twenty-five instructional days to the school calendar for four IPS schools.

We dismiss this appeal as moot.

## ISSUE

Whether this appeal should be dismissed as moot.

## FACTS[1]

The relevant facts, as stipulated by the parties before the IEERB, are as follows:

1.    [IEA] is a "school employee organization" as that term is defined in Ind. Code § 20-29-2-14 and is located at 6910 North Shadeland Avenue, Suite 100, Indianapolis, Indiana 46220.

\* \* \* \* \*

3.    [IPS] is a "school employer" as that term is defined in Ind. Code § 20-29-2-15 and is located at 120 East Walnut Street, Indianapolis, Indiana 46204.

\* \* \* \* \*

5.    IEA is the "exclusive representative" of the IPS school employees as that term is defined in Ind. Code § 20-29-2-9.

6.    Dr. Eugene White is a "supervisor" for IPS as that term is defined in Ind. Code § 20-29-2-19 and is employed as the Superintendent of IPS as defined in Ind. Code § 20-29-2-18.

7.    Dr. Jacqueline Clency is a "supervisor" for IPS as that term is defined in Ind. Code § 20-29-2-19 and is employed as the Assistant Superintendent, Middle School Education for IPS.

\* \* \* \* \*

---

[1] We heard oral argument on November 30, 2011. We commend counsel on their written advocacy and oral presentations.

9. The Professional Relations Group ("PRG") is composed of representatives of IPS and IEA and is scheduled to meet monthly to talk about issues and concerns of both parties. The topics on the agenda may be referred for "meaningful" discussion. Other topics may be noted as topics for bargaining. Other topics are for information only.

10. The School Improvement Plan/Superintendent's Advisory Group ("SIP/SAG") is composed of representatives of IPS and IEA and is scheduled to meet monthly for the purpose of "meaningful discussion" on the topics listed in Ind. Code § 20-29-6-7.

11. In the 2006-2007 school year, John Marshall Middle School ("Marshall") and Emma Donnan Middle School ("Donnan") were at Year three of School Improvement under No Child Left Behind ("NCLB"), meaning that they had not made Adequate Yearly Progress ("AYP") for four consecutive years. In addition to school choice, school improvement planning/technical assistance, and professional development, IPS implemented new curriculum, decreased management authority, and appointed an outside expert.

12. In the 2006-2007 school year, Henry Wadsworth Longfellow Middle School ("Longfellow") was at Year six of School Improvement, meaning that it had not made AYP for more than six consecutive years. In addition to school choice, school improvement planning/technical assistance, professional development, and supplemental educational services, IPS implemented restructuring and an alternative calendar with additional voluntary intercession days.

13. In the 2006-2007 school year, Riverside Elementary #44 ("Riverside") was in Year four of School Improvement, meaning it had not made AYP for five consecutive years. In addition to school choice, school improvement planning/technical assistance, professional development, and supplemental educational services, IPS replaced the principal, implemented new curriculum, and appointed an outside expert.

* * * * *

15. For the 2007-2008 school year, Marshall, Donnan, Longfellow, and Riverside moved to the next level of school improvement.

16. At the PRG meeting on Wednesday, March 14, 2007, at approximately 8:30 a.m., Dr. White informed IEA of the action IPS planned to implement under NCLB at Marshall, Donnan and Longfellow middle schools. IPS, as the local education agency, planned to place the schools on an alternative calendar, including adding an additional 25

3

instructional days of mandatory school attendance for students and teachers. At Riverside, IPS informed IEA that it would be implementing restructuring, including replacing the principal and all the certified staff and placing the school on an alternative calendar, including adding an additional 25 instructional days of mandatory school attendance for students and teachers; the new certified staff who chose to work at this school would also be mandated to work the additional 25 instructional days a year.

17. Dr. White informed IEA that, immediately after school on Wednesday, March 14, 2007, the teachers at Marshall, Donnan, and Longfellow would be advised of their option to stay at their school and work the additional 25 days or be involuntarily transferred to a school on the traditional calendar.

18. Making the transfers involuntary meant that those teachers would have a priority for reassignment. All teachers from Marshall, Donnan, and Longfellow who sought reassignment were reassigned to schools on the traditional calendar.

19. Dr. Clency presented a calendar during the March 14th PRG meeting that showed the days that the teachers at the middle schools on the alternative calendar would be required to work and that students would be in attendance . . . .[2]

20. On March 14, 2007, IEA delivered a letter to Dr. White objecting to IPS'[s] implementation of Level IV sanctions under NCLB without having meaningful discussion with IEA . . . .[3]

21. On or about March 28, 2007, and March 29, 2007, the teachers at Donnan, Marshall, and Longfellow received a letter from IPS'[s] Human Resources division that stated, "I understand that by choosing to teach at [name of school] during the 2007-2008 School Year I am obligated to work the following alternative calendar schedule . . . ." The letter also said, "I understand that I will receive no additional paid personal or sick days in the alternative calendar schedule," and, "I understand that I will not be able to utilize paid personal or sick days during the intercessions." . . . .[4]

---

[2] A copy of the calendar was attached as Exhibit 2 to the parties' Stipulation of Facts.

[3] A copy of the letter from the IEA president was attached as Exhibit 3 to the parties' Stipulation of Facts.

[4] A copy of the letter from IPS was attached as Exhibit 4 to the parties' Stipulation of Facts.

22. The letter delivered to the three middle schools had places for the teachers to sign and date their agreement to the terms and said, "Please fax this completed form to 3650 by 3/30/07."

23. On March 29, 2007, IEA delivered a letter to Dr. White, which stated that IPS had violated P.L. 217 by failing to bargain the number of days a teacher must work, by failing to discuss the change to the Alternative Calendar, and by failing to bargain concerning leave days . . . .[5]

24. IPS and IEA had previously discussed an alternative calendar that was in effect for five (5) schools consisting of 190 mandatory teacher days spread over the whole calendar year with voluntary intercession days for the teachers and students.

25. IPS did not discuss the placement of the 25 additional days on the Alternative Calendar for Marshall, Donnan, Longfellow, and Riverside for the 2007-08 school year. IPS also did not discuss with IEA the replacement of all certified staff at Riverside.

26. IPS did not bargain or discuss with IEA the addition of 25 days at the four schools, or additional sick or personal leave days for teachers who teach the additional 25 days.

27. Also, prior to issuing the March 28/29 letter to teachers, IPS did not bargain or discuss with IEA the use of sick or personal leave days during the intercessions.

28. Ultimately, after conversations between representatives of IPS and IEA, IPS agreed that teachers would be allowed to use sick days and personal days during the intercessions in compliance with the parties' collective bargaining agreement.

29. At its action session on May 15, 2007, the Board of School Commissioners for the City of Indianapolis unanimously approved the Superintendent's recommendation to extend the school year for Donnan, Marshall, Longfellow, and Riverside for the 2007-2008 school year. . . .[6]

---

[5] A copy of the letter from the IEA president was attached as Exhibit 6 to the parties' Stipulation of Facts.

[6] A copy of the Agenda Item was attached as Exhibit 7 to the parties' Stipulation of Facts.

(App. 26-30). Additionally, IPS and IEA had a collective bargaining agreement that was in effect for the 2005-2006 and 2006-2007 school years and continued in effect for the 2007-2008 school year until a new agreement was reached.[7] The collective bargaining agreement contained the following provisions:

## ARTICLE VII

## SUMMER SCHOOL, INTERSESSION AND ADULT EDUCATION

**Section 1:** Teachers of summer school, intersession and adult education classes shall be issued a Supplemental Services Teachers Contract. The teachers shall be paid at an hourly rate which is computed by dividing the teacher's annual base salary by the number of contract days (190 contract days). This equals the daily rate, which divided by six (6), equals the teacher's hourly rate.

\* \* \* \* \*

## ARTICLE IX

## PROFESSIONAL COMPENSATION
\* \* \* \* \*

**Section 9:** In the event that a member of the certified staff is required to work on authorized IPS programs or activities beyond the regular school calendar, such days of work shall be compensated at his/her daily rate unless otherwise specified in this Agreement.

\* \* \* \* \*

## ARTICLE XVI

## HOURS

**Section 1:** The regular teacher workday shall be 7.5 hours with a duty-free lunch of at least 30 minutes between 10:00 a.m. and 2:00 p.m.

**Section 2**[:] Beginning with the 2002-2003 school year, all designated service agreements will be calculated on a 6-hour day of service, except as otherwise required by law.

(App. 67, 69, 81).

---

[7] A copy of the collective bargaining agreement was attached as Exhibit 8 to the parties' Stipulation of Facts.

On May 7, 2007, IEA filed with IEERB a complaint, alleging, in relevant part, that IPS's decision to add twenty-five instructional days to the four schools' calendars was a mandatory subject of collective bargaining under Indiana Code section 20-29-6-4[8] and that IPS had engaged in an unfair labor practice by failing to collectively bargain the addition of those twenty-five days to the schools' calendars.[9] The parties filed cross-motions for summary judgment and stipulated to the facts as set forth above.

On March 27, 2008, the IEERB Hearing Examiner issued a report, in which she determined, in relevant part, that IPS had engaged in an unfair labor practice by failing to bargain with IEA the addition of twenty-five mandatory instructional days in violation of the mandatory collective bargaining statute, Indiana Code section 20-29-6-4. Specifically, the Hearing Examiner concluded that because "[t]he statute require[d] bargaining of hours[,] [r]equiring teachers to work additional hours without bargaining [was] a classic unfair labor practice." (App. 137). The Hearing Examiner

---

[8] At the time IEA filed its complaint, Indiana Code section 20-29-6-4 provided:

> A school employer shall bargain collectively with the exclusive representative on the following:
> (1) Salary.
> (2) Wages.
> (3) Hours.
> (4) Salary and wage related fringe benefits, including accident, sickness, health, dental, or other benefits under IC 20-26-5-4 that were subjects of bargaining on July 1, 2001.

This statute, along with other statutes dealing with education and teacher collective bargaining, were amended effective July 1, 2011. *See* P.L. 48-2011, § 14. The amended version of the statute removes "hours" from the subjects of mandatory collective bargaining. *See* Ind. Code § 20-29-6-4 (2011).

[9] IEA filed an amended complaint in which it asserted five allegations of unfair labor practices against IPS. Appellant, however, has not included a copy of the amended complaint in its Appendix.

"recommend[ed] that IPS be ordered to return to the status quo ante as it existed prior to the unfair practices." [10] (App. 147).

Thereafter, IPS filed exceptions to the Hearing Examiner's report, and the full IEERB held a hearing on those exceptions on April 30, 2009. On June 26, 2009, the IEERB unanimously affirmed the Hearing Examiner's report and adopted her findings, conclusions, and recommended order. The IEERB's order provides, in part:

> The Board seeks to avoid the possibility that the remedies available under P.L. 217 [Indiana Code 20-29] might have the unintended consequence of polarizing rather than enhancing the collective bargaining and discussion relationship between the parties. We commend the parties for how they achieved practical solutions in the interim two years for the ultimate benefit of the students involved. Although this matter was decided unanimously by the Board on April 30, 2009, the Board refrained from immediately issuing its "final order" in accordance with 560 IAC 2-3-23(d) in the hope that the parties shall fashion their own agreement as to remedies. We hope that we shall receive confirmation of the parties' agreement, such as in the form of a Joint Motion for Modification of a Final Order.

(App. 114) (footnote omitted).

On July 24, 2009, IPS filed a petition for judicial review of the IEERB's order only on the conclusion that IPS had engaged in an unfair labor practice by failing to bargain the addition of the twenty-five instructional days. The parties filed cross-motions for summary judgment on the agency record, and the trial court held a hearing on November 10, 2010. On December 23, 2010, the trial court issued a detailed order, in which it ultimately set aside the IEERB's order. In determining that IPS had not

---

[10] The Hearing Examiner also determined that IPS had engaged in four additional unfair labor practices by: (1) failing to bargain with IEA regarding benefits related to the addition of teacher instructional days in violation of Indiana Code section 20-29-6-4; (2) failing to discuss with IEA changes to an alternative calendar in violation of Indiana Code section 20-29-6-7; (3) failing to discuss with IEA reassignment and transfer of teachers in violation of Indiana Code section 20-29-6-7; and (4) bypassing IEA by unilaterally communicating with teachers in violation of Indiana Code section 20-29-7-1.

committed an unfair labor practice, the trial court concluded, in part, that: (1) the parties' collective bargaining agreement reflected that the parties had bargained over "hours" and "show[ed] that IPS can require teachers to work additional days beyond the regular school calendar, but, if it does so, it must pay the teachers and permit them to use leave days as bargained and set forth in the Agreement[,]" (tr. 12); (2) the collective bargaining statutes, (sometimes referred to as the Certified Educational Employee Bargaining Act ("CEEBA")),[11] provided the IPS school board with authority and responsibility to

---

[11] The trial court cited to the following statutes, which at the time of the trial court's order, provided as follows:

20-29-1-1 Findings and intent
> (4) The relationship between school corporation employers and certificated school employees is not comparable to the relationship between private employers and employees for the following reasons:
> * * * * *
> (C) The general assembly has delegated the discretion to carry out this changing and innovative educational function to the governing bodies of school corporations, composed of citizens elected or appointed under applicable law, a delegation that these bodies may not and should not bargain away.

20-29-6-2(3) Prohibited contract provisions
> "A contract may not include provisions that conflict with . . . school employer rights set forth in IC 20-29-4-3."

20-29-4-3 School employers; responsibilities and authority
> School employers have the responsibility and authority to manage and direct on behalf of the public the operations and activities of the school corporation to the full extent authorized by law, including but not limited to the following:
> * * * * *
> (7) Take actions necessary to carry out the mission of the public schools as provided by law.

20-28-6-2(a) Basic contract requirements
> (a) A contract entered into by a teacher and a school corporation must:
> (1) be in writing;
> (2) be signed by both parties; and
> (3) contain the:
> (A) beginning date of the school term as determined annually by the school corporation;

9

manage and direct operation of the schools and that these statutes, along with case law,[12] indicated that the instructional calendar issue—including determining the total number of school days in the school year—was an issue that fell within that authority and could not be bargained away; and (3) the IEERB incorrectly interpreted the term "hours" contained in the mandatory collective bargaining statute (Indiana Code § 20-29-6-4) to include "days" and its interpretation "rendered meaningless the exclusive management authority provisions of CEEBA . . . –as confirmed by case law – to determine [the] school calendar, including [the] total number of instructional days." (App. 19). IEA now appeals.

## DECISION

### Collective Bargaining Statute

The Indiana legislature authorized collective bargaining for teachers in 1973 with the passage of Public Law 217.[13] At issue in this appeal is whether IPS committed an unfair labor practice by violating the provisions of Indiana's collective bargaining statute.

---

(B) <u>number of days in the school term as determined annually by the school corporation;</u>
(C) total salary to be paid to the teacher during the school year; and
(D) number of salary payments to be made to the teacher during the school year.

(Emphasis added).

[12] The trial court relied on the following cases to support its determination that a decision regarding the school calendar, including total number and placement of instructional days was a non-negotiable, managerial decision: *Eastbrook Cmty. Sch. Corp. v. Ind. Educ. Emp't Relations Bd.*, 446 N.E.2d 1007 (Ind. Ct. App. 1983), *reh'g denied*; *Union Cnty. Sch. Corp. Bd. of Trustees v. Ind. Educ. Emp't Relations Bd.*, 471 N.E.2d 1191 (Ind. Ct. App. 1984), *trans. denied*; *Northwestern Sch. Corp. of Henry Cnty. Bd. of School Trustees v. Ind. Educ. Emp't Relations Bd.*, 529 N.E.2d 847 (Ind. Ct. App. 1988), *trans. denied*.

[13] Originally enacted under Indiana Code sections 20-7.5-1-1 to -14, the teacher collective bargaining statutes are currently found at Indiana Code sections 20-29-1-1 to 20-29-9-5.

Specifically, the issue before us is whether IPS was required—under Indiana Code section 20-29-6-4, the mandatory collective bargaining statute—to bargain with IEA regarding the addition of instructional days to the 2007-2008 school calendars of four IPS schools because that bargaining statute required bargaining on the subject of "hours." As noted above, at the time IEA filed its complaint with the IEERB, Indiana Code section 20-29-6-4 provided:

> A school employer shall bargain collectively with the exclusive representative on the following:
>
> (1) Salary.
>
> (2) Wages.
>
> (3) Hours.
>
> (4) Salary and wage related fringe benefits, including accident, sickness, health, dental, or other benefits under IC 20-26-5-4 that were subjects of bargaining on July 1, 2001.

The legislature, however, recently amended Indiana Code section 20-29-6-4 and other teacher and collective bargaining statutes during last year's legislative session, with an effective date of July 1, 2011. *See* P.L. 48-2011, § 14. These amendments were not in effect at the time the dispute in this appeal arose but will need to be considered when determining whether this appeal is moot.

Under the recent amendment to the mandatory collective bargaining statute, the subject of teachers' "hours" is no longer included as one of the subjects of mandatory collective bargaining. *See* I.C. § 20-29-6-4 (2011) (limiting bargaining to salary, wages, and related fringe benefits including insurance, retirement, and time off). Instead, the

11

subject of "hours" is now included in the list of topics that the school employer and the teachers' representative "shall discuss." *See* I.C. § 20-29-6-7(10). Another notable change to Indiana Code section 20-29-6-7 is that the subject of "working conditions" is no longer included in the list of topics that are required to be discussed.[14] Lastly, a new section to the teacher collective bargaining statutes now provides that a school employer "may not bargain collectively" with the teachers' representative on the subject of "[t]he school calendar." *See* I.C. § 20-29-6-4.5 (new section added that applies to contracts entered after June 30, 2011).[15]

Mootness

> IPS argues that this court should dismiss this case because it is moot.
>
> The long-standing rule in Indiana has been that a case is deemed moot when no effective relief can be rendered to the parties before the court. *A.D. v. State*, 736 N.E.2d 1274, 1276 (Ind. Ct. App. 2000). When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed. *Id.* The existence of an actual controversy is an essential requisite to appellate jurisdiction. *Bremen Public Schools v. Varab*, 496 N.E.2d 125, 126 (Ind. Ct. App. 1986). Although we prefer not to issue advisory opinions, we may decide an arguably moot case on its merits if it involves questions of great public interest. *A.D.*, 736 N.E.2d at 1276. Nevertheless, this public interest exception may only be invoked upon the existence of three elements: the issue concerns a question of great public importance which is likely to recur

---

[14] Also, the "grandfather clause" previously contained in Indiana Code section 20-29-6-7 has now been removed from that statute. The grandfather clause provided that "items included in the 1972-1973 agreements between an employer school corporation and the school employee organization continue to be bargainable." I.C. § 20-29-6-7(c) (2010). The grandfather clause is not at issue in this appeal.

[15] Additionally, Indiana Code section 20-28-6-2, which sets forth the basic teacher contract requirements, still provides that a "contract entered into by a teacher and a school corporation must . . . contain the . . . number of days in the school term as determined annually by the school corporation" but now also specifies that the contract must contain "the number of hours per day the teacher is expected to work, as discussed pursuant to IC 20-29-6-7."

in a context which will continue to evade review. *Haggerty v. Bloomington Bd. of Public Safety*, 474 N.E.2d 114, 116 (Ind. Ct. App. 1985).

*DeSalle v. Gentry*, 818 N.E.2d 40, 48–49 (Ind. Ct. App. 2004).

In arguing that this case is moot, IPS first points to the fact that the teachers will not be able to gain any effective relief from this appeal because they have been paid, and it contends that this case is neither of great public importance nor is it likely to recur and evade review given the changes to the teacher collective bargaining statutes:

> The Union claims that – in 2007 – IPS should have bargained over the number of additional days it would require certain teachers to teach at the four schools at issue. IPS did not bargain over that issue. Instead, the teachers taught for the additional days, and they were paid at the daily rate required by the [parties' collective bargaining] Agreement. Even if this Court rules that the trial court erred, the parties cannot unbreak the eggs in this omelet.
> This appeal is moot because the case is no longer live. The teaching has been done, and the teachers have been paid. They do not seek any back pay or other retrospective relief. No effective relief can be rendered to the Union or its members through this appeal. . . .
> Nor is this situation capable of repetition yet evading review because the underlying statute has now been entirely changed. Because of the change in the underlying law, this situation cannot arise again in IPS or any other school district. . . .
> The changes in teacher bargaining law that preclude this question from arising again were enacted as part of comprehensive education law reform in 2011, aimed at increasing school leaders' authority to determine how to educate children. This new legislation completely changed the landscape of education and teacher collective bargaining. . . .
> Because teacher collective bargaining law has changed fundamentally, this matter is not capable of repetition, and it certainly is no longer "a matter of great public importance." . . .
> With the[] statutory changes, an appellate decision in this case will have no effect on the parties. An appellate decision cannot affect past conduct regarding teaching time at the four schools at issue, nor can it affect future bargaining between IPS and the Union because the General Assembly has removed from bargaining precisely the issues in play in this case. This Court should dismiss the appeal as moot.

IPS's Br. at 22-26 (footnote omitted).

At oral argument, IEA acknowledged that the teachers worked the extra twenty-five days at issue and were paid for those days and that there is essentially no effective relief to be had as a result of this appeal. Instead, IEA contends that the collective bargaining process between a school corporation and teachers' representatives is a matter that falls within the public interest exception to the mootness doctrine. IEA, however, also acknowledged during oral argument that the question before us on appeal—whether the subject of "hours" as contained in the bargaining statute, Indiana Code section 20-29-6-4, required IPS to bargain the addition of days to the school calendar—is not likely to recur in this same context given the removal of "hours" from the "bargaining" section of statute (Indiana Code section 20-29-6-4). Nevertheless, IEA seeks to have this court interpret the meaning of "hours" in the context of its inclusion in the "discussion" section of the collective bargaining statute (Indiana Code section 20-29-6-7). IEA contends that the interpretation of the term "hours" (and whether school "days" fall into that definition) is still important for future cases because the term "hours" still exists in the collective bargaining statute under Indiana Code section 20-29-6-7 and could still be a potential issue that may arise under what subjects are required to be discussed under that section of the statute.

Here, it is clear that—even if we were to address the question of whether IPS was required under Indiana Code section 20-29-6-4 to bargain the addition of instructional days with IEA—there is no effective relief that can be rendered in this appeal. Accordingly, this appeal is moot. *See DeSalle*, 818 N.E.2d at 48-49. Furthermore, we

14

conclude that the public interest exception to the mootness doctrine does not apply here because the issue of collective bargaining requirements between IPS and IEA in this appeal is not a question of great public importance[16] and the issue presented here is not likely to recur in a context that will continue to evade review. *See id.* Furthermore, IEA's request that we interpret the term "hours" because it may potentially be at issue in the future under the "discussion" section of the collective bargaining statutes essentially amounts to a request for an advisory opinion, which we will not do. *See Cooper v. State*, 917 N.E.2d 667, 673 (Ind. 2009) (refusing to determine an issue that was not properly before the Indiana Supreme Court). Accordingly, we dismiss this appeal.

Dismissed.

FRIEDLANDER, J., concurs.

VAIDIK, J., concurs in result with opinion.

---

[16] We acknowledge that the issue is of importance to the parties involved, but we fail to see how the issue amounts to an issue that concerns the greater general public. *See Annexation Ordinance F-2008-15 v. City of Evansville*, 955 N.E.2d 769, 778 (Ind. Ct. App. 2011) (refusing to apply the public interest exception where the issue did not involve a public interest to the greater general public beyond the parties), *trans. pending*.

# IN THE
# COURT OF APPEALS OF INDIANA

INDIANAPOLIS EDUCATION ASSOCIATION )
AND PRESIDENT ELDEN WOLTING, )
  )
    Appellants, )
  )
       vs. )    No. 49A02-1101-PL-27
  )
INDIANAPOLIS PUBLIC SCHOOLS, )
  )
    Appellee. )
  )

**VAIDIK, Judge, concurring in result.**

I respectfully disagree with my colleagues' conclusion that the issue in this case is "not a question of great public importance." Slip op. at 15. Rather, I think that teacher collective bargaining is a question of great public importance. But because I believe that the issue is not likely to recur given the Indiana General Assembly's 2011 overhaul of the teacher collective bargaining statutes, I concur in result.

Generally, an issue is deemed to be moot when the case is no longer live and the parties lack a legally cognizable interest in the outcome of its resolution or where no

16

effective relief can be rendered to the parties.  *Lake Cnty. Bd. of Elections & Registration v. Copeland*, 880 N.E.2d 1288, 1291 (Ind. Ct. App. 2008), *reh'g denied*.  Nonetheless, even if an appeal is moot and no practical remedy is available to the parties, we can review issues under the public-interest exception, which may be invoked when the case involves a question of great public importance that is likely to recur.  *Id.*  There must be some measure of certainty that the question will recur, not just a possibility.  2 I.L.E. § 237 (2011).

Here, it is undisputed that no effective relief can be rendered because the teachers worked the extra twenty-five days at issue and were paid for those days.  Accordingly, IEA urges application of the public-interest exception.  Although the majority acknowledges that the issue is of importance to the parties involved, it "fail[s] to see how the issue amounts to an issue that concerns the greater general public."  Slip op. at 15 n.16.  I disagree.  Alleged violations of teacher collective bargaining statutes are clearly against the general public interest since they are inconsistent with the statutory goal of encouraging harmonious and cooperative relationships between school corporations and their certified employees and have a detrimental effect on public education.  Ind. Code Ann. § 20-29-1-1(1) (West 2008); *Ind. Educ. Emp't Relations Bd. v. Mill Creek Classroom Teachers Ass'n*, 456 N.E.2d 709, 712 (Ind. 1983).  Our children's education is paramount, and essential to this is recruiting and retaining the highest quality teachers to educate them.  Disputes between school corporations and certified teachers concerning things such as salary, benefits, hours worked in a day, days worked in a year, and other quality-of-life issues impact not only the entire education field but also the children.   As

17

we should always strive for the best educational environment possible for our children, I believe this is an issue of great public importance.

At the time of the events in this case, Indiana Code section 20-29-6-4 provided that "hours" was a subject of mandatory collective bargaining:

> A school employer shall bargain with the exclusive representative on the following:
> (1) Salary.
> (2) Wages.
> (3) *Hours*.
> (4) Salary and wage related fringe benefits . . . .

Ind. Code Ann. 20-29-6-4 (West 2008) (emphasis added). IEA points out that for over thirty years, IEERB interpreted this statute as requiring school corporations to bargain the number of days that a teacher must work in a school year—and not just the hours in each work day. The legislature, however, amended this statute and others in 2011 with an effective date of July 1, 2011. As indicated by the majority, the subject of "hours" is no longer a subject of mandatory collective bargaining under this recent amendment. *See* Ind. Code Ann. § 20-29-6-4(a) (West Supp. 2011). Rather, "hours" is listed as a subject that a school employer and exclusive representative of the teachers "shall discuss." Ind. Code Ann. § 20-29-6-7(10) (West Supp. 2011).

If this were the only reference to "hours" in the statute, then I believe that we should interpret the meaning of that term. However, it is not the only reference. Amended Indiana Code section 20-28-6-2 cross references Indiana Code section 20-29-6-7(10) and designates what must be included in a contract entered into by a teacher and a school corporation, including "(E) the number of hours per day the teacher is expected to

18

work, as discussed pursuant to IC 20-29-6-7." Ind. Code Ann. § 20-28-6-2(a) (West Supp. 2011). Consequently, the legislature has spoken; there is no ambiguity as to the meaning of the term "hours." Despite this issue being of great public importance, I believe that in light of the recent amendments to the teacher collective bargaining statutes, it is not likely to recur absent legislative change.