EVANSVILLE–VANDERBURGH
SCHOOL CORPORATION, Appellant (Defendant below),

v.

Mike ROBERTS and Indiana Education Employment Relations Board, Appellees (Plaintiffs below).

No. 580S159.

Supreme Court of Indiana.

May 30, 1980.

Ronald R. Allen, Jeffrey R. Frank, Evansville, for appellant.

Jack N. Vanstone, Evansville, for appellee, Mike Roberts.

Robert W. Rund, David J. Emmert, Indiana School Boards Ass'n, Indianapolis, for amicus curiae, Indiana School Boards Assn.

Jonathan L. Birge, Bingham, Summers, Welsh & Spilman, Indianapolis, for amicus curiae, Indiana State Teachers Assn.

G. Daniel Kelley, Michael H. Boldt, Indianapolis, for amicus curiae, Bd. of School Trustees of Metropolitan School Dist. of Washington Tp., Marion County.

HUNTER, Justice.

This case is before this Court upon the petition to transfer of defendant-appellant, Evansville-Vanderburgh School Corporation (EVSC). Appellees Mike Roberts and the Indiana Education Employment Relations Board (IEERB) prevailed at trial when the trial court entered judgment in favor of the school employee organization and upheld the decision of the IEERB that the school corporation was guilty of an unfair practice. The Court of Appeals, First District, affirmed the trial court's decision against the school corporation in a unanimous opinion on rehearing authored by Judge Robertson. *Evansville-Vanderburgh School Corporation v. Roberts,* (1979) Ind.App., 395 N.E.2d 291.

Transfer is now granted in order to give more detailed consideration to the final issue discussed by Judge Robertson. Accordingly, the decision and opinion of the Court of Appeals are hereby vacated, and defendant's petition to transfer is granted. We, nevertheless, affirm the judgment of the trial court.

Mike Roberts initiated this action on behalf of the Evansville Teachers Association (ETA) by the filing of an unfair practices complaint with the IEERB. The basis for the complaint was that the school corporation (EVSC) had allegedly implemented a teacher evaluation plan without any discussion with the ETA which was admitted to be the exclusive representative for the teachers in that school corporation. The school corporation was also charged with an unfair practice on the grounds that the plan was promulgated by a committee of school teachers (none of whom were members of the ETA) chosen by the administration without consultation with the ETA. The trial court upheld the Hearing Officer's findings against the school corporation on both these points.

We adopt the opinion as written by Judge Robertson which affirms the trial court on these two points, as follows:

"Evansville-Vanderburgh School Corporation has filed a petition for rehearing in this cause and, upon examination of the same, said petition is hereby granted and the opinion heretofore rendered in this cause[1] is vacated.

\*    \*    \*    \*    \*    \*

[Footnote 2 contained in omitted material is also omitted]

■ "At the outset, we deem it appropriate to enunciate the proper standard of review, this being an appeal from an administrative agency that is within the purview of the Administrative Adjudication Act. *See Ind.Code* 20–7.5–1–11. It is the function of the IEERB to conduct a *de novo* proceeding to ascertain whether an unfair practice has been committed (*see Indiana Education Employment Relations Board v. Board of School Trustees of Delphi Community School Corporation* (1977), Ind.App., 368 N.E.2d 1163), and on appeal to the trial court, such court acts in a *reviewing* capacity.

The board or agency, not the court determines the issues of fact. The court cannot weigh conflicting evidence, which appears in the record of the hearing, for the purpose of determining for whom it preponderates. If there is any substantial evidence to support the finding of the board or agency, the court may not disturb the board's or agency's decision. *Indiana Ed. Emp. Rel. Bd. v. Board of School, etc.* (1976), Ind.App., 355 N.E.2d 269

*Indiana Education Employment Relations Board v. Board of School Trustees of Baugo*

---

1. *Evansville-Vanderburgh School Corporation v. Roberts* (1979) Ind.App., 392 N.E.2d 810.

*Community Schools* (1978), Ind.App., 377 N.E.2d 414, 416.

"We first deal with the correctness of the conclusion of the Hearing Officer, the IEERB, and the trial court that EVSC violated IC 20–7.5–1–7(a)(5) for the failure to discuss the teacher evaluation plan with the ETA prior to implementation. This statute declares that an employer commits an unfair practice for the refusal to discuss matters encompassed by IC 20–7.5–1–5, which provides:

> A school employer shall discuss with the exclusive representative of certificated employees, and may but shall not be required to bargain collectively, negotiate or enter into a written contract concerning or be subject to or enter into impasse procedures on the following matters: working conditions, other than those provided in Section 4; curriculum· development and revision, textbook selection; teaching methods; selection, assignment or promotion of personnel; student discipline; expulsion or supervision of students; pupil-teacher ratio; class size or budget appropriations . . . .

This obligation to discuss is more fully defined in IC 20–7.5–1–2(*o*):

> 'discuss' means the performance of the mutual obligation of the school corporation through its superintendent and the exclusive representative to meet at reasonable times to discuss, to provide meaningful input, to exchange points of view, with respect to items enumerated in Section 5 [immediately above] of this chapter. This obligation shall not, however, require either party to enter into a contract, to agree to a proposal, or to require the making of a concession. A failure to reach an agreement on any matter of discussion shall not require the use of any part of the impasse procedure . . . .

Collectively, these statutes provide that an employer commits an unfair practice under these sections if he refuses to meet at reasonable times with the exclusive bargaining representative and 'provide meaningful input, [and] exchange points of view,' with respect to working conditions, curriculum development, teaching methods, *et cetera.* Therefore, at least two issues are of critical import: (1) is the matter embraced within the 'discussable' items of IC 20–7.5–1–5, and (2) did the parties discharge their obligations pursuant to IC 20–7.5–1–2(*o*)?

■ "With respect to the former, both parties have concentrated their efforts on whether the teacher evaluation plan was within the meaning of 'working conditions.' In construing a statute, we are ever-mindful that the words used are to be given their usual and ordinary meaning, and 'we should not so construe a statute as to willfully and unnecessarily narrow or emasculate its provisions.' *White v. White* (1975), Ind.App., 338 N.E.2d 749, 754 (citation omitted). We believe the teacher evaluation plan in issue is indeed within the plain and *ordinary meaning of 'working conditions.'* The 'philosophy' of the plan is to maintain high teacher competence by means of self-evaluation forms, classroom observation by 'evaluators,' and an evaluation conference. The entire process may result in a recommendation for a change of assignment or dismissal, and appeal procedures are provided for. The guidelines for evaluators include 'Instructional Skills,' such as adapting teaching methods to individual abilities of pupils, and using 'approved methods of correspondence, notes, [and] home visitation . . . .' Teacher guidelines also include consideration of whether he or she eliminates outmoded teaching styles; eliminates busy work; trains students in the proper care and use of school supplies and equipment; prepares a written lesson plan in case a substitute teacher is required; gives classroom discipline appropriate to the 'offense;' communicates and cooperates with parents; 'display[s] emotional stability;' exercises 'care and good taste in personal appearance;' 'belong[s] to and participate[s] in professional organizations;' supports extracurricular and parent-supported activities, *et cetera.* We believe these factors significantly touch and concern the everyday activities of school teachers and, there-

fore, are within the ordinary understanding of 'working conditions.'[3]

■ "EVSC nevertheless complains that since the statute does not establish a 'time frame' for discussions, it discharged its obligation by its willingness to discuss the issue *after* the plan was implemented. We agree with the IEERB below that 'meaningful input' requires a willingness to discuss *prior* to implementation of the plan.[4]

■ "EVSC next contends that the ETA waived its rights to a discussion for the failure to request an opportunity to meet prior to the implementation of the plan. This contention, even if we were to accept that a waiver could apply, is without merit. The trial court, in its special findings of fact below, stated:

11. There is substantial evidence in the record to support the hearing examiner's two additional findings of fact, which are as follows:

a. Robert Kraft was Vice-President of the ETA at the time of his appointment to chair the Evaluation Committee. He resigned as Vice-President of the ETA in February, 1975, months before the Committee completed work on the evaluation instrument and guide. His resignation precipitated a breakdown in communication between the ETA leadership and the Evaluation Committee.

b. Randall Harris, former President of the ETA, and Norma Kacen, Executive Director of the ETA, were not aware that the Evaluation Committee had finished its project and had produced a new evaluation instrument and guide until they received the agenda for August 28, 1975, School Board Meeting . . . . . Although the ETA received the agenda from one to three days prior to the School Board Meeting, it was not unreasonable for the ETA to wait until the school board meeting to request discussion. * * *

As these findings are supported by the record, the knowledge of ETA herein was not, in our opinion, sufficient to support EVSC's contention of waiver.

■ "It is further alleged that the trial court failed to adopt as fact that '[t]he Evansville Teachers Association knew before August 28, 1975, of the existence of the evaluation committee and that an instrument and guide were being prepared.' Assuming that such a finding should have been made, it would be incumbent upon this court to liberally construe findings of fact *together*, consistent with the resulting judgment. *In re Marriage of Miles* (1977), Ind.App., 362 N.E.2d 171. In considering the findings recited above, the proffered finding of fact could only be construed as referring to the 'knowledge' obtained either by Kraft, or by the ETA three days prior to the meeting. Since these facts were otherwise established, the omitted finding would have been merely cumulative. Accordingly error, if any, is harmless. Ind.Rules of Procedure, Trial Rule 61.

■ "EVSC next argues that the trial court erred in failing to find, as did the hearing officer, that the Superintendent did not act in bad faith in failing to discuss the plan, but rather was merely under a misapprehension of what constituted 'discussable' topics. We must admit confusion in EVSC's presentation of this issue. The lack of cogent argument results in a waiver under Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). In an attempt to accommodate EVSC, however, we believe its contention is that the failure to discuss topics embraced within section 5 cannot, standing alone, constitute an unfair practice. We decline to adopt the proposition that all unfair practices must be based on a finding of bad faith. We believe the legislature's intent is clear that all concerned parties have an obligation to collectively bargain in good

---

3. As we believe the plan comes within the plain and ordinary meaning of 'working conditions,' we decline the invitation of EVSC to employ various devices for the construction of ambiguous statutes.

4. The IEERB said that a prior discussion requirement was consistent with its previous decisions.

faith [with respect to certain specified topics] (section 4), and to promote meaningful input and the free interplay of ideas with respect to discussable topics. As such, the *process* of discussion and bargaining are governed only by the somewhat elastic standard of good faith.[5] Here, however, the *process* of discussion is not in issue; rather, we are faced with a *total failure* to discuss a discussable topic. In such a case, we believe the good or bad faith of the parties is irrelevant as to whether an unfair practice has occurred.[6] It seems clear that the fundamental objective of the Act is to bring the parties together; thereafter, supervision by the IEERB is drastically limited to whether the process was infected with bad faith conduct. We believe, therefore, that the rudimentary purpose of the Act is to bring the parties to the discussion or bargaining table and the obligation to comply therewith is not dependent upon a showing of bad faith.

■ "The more sensitive issue raised by EVSC concerns the trial court's affirmance of the Hearing Officer's conclusion of law [7] that EVSC had violated section 7(a)(1) [8] which states that it is unfair practice for an employer to 'interfere with, restrain or coerce school employees in the exercise of rights guaranteed in section 6 of this chapter.' This violation is allegedly based on the ground that the evaluation committee was selected without consultation with the ETA. The trial court found that the parties admitted the following relevant facts:

a. That the School Board through its administrative staff sets up many committees which include school em-

ployees, some * of whom are members of ETA, for the purpose of working on many items including discussable items provided in Section 5(a) of the act without seeking prior appointment approval of such school employees from the exclusive representative. Such appointed school employees serve individually on such committees and do not represent in a representative capacity the Petitioner [ETA]. This stipulation applies to the Evaluation Committee in dispute.

b. The establishment of school committees which include school employees is not intended to take the place of the EVSC discussion obligations under Section 5(a) of the Act.

We must determine whether the facts presented herein had the operative effect of encroaching upon employee rights as embodied in section 6(a), which provides:

School employees shall have the right to form, join or assist employee organizations, to participate in collective bargaining with school employers through representatives of their own choosing and to engage in other activities, individually or in concert for the purpose of establishing, maintaining, or improving salaries, wages, hours, salary and wage related fringe benefits and other matters as defined in sections 4 and 5.

Insofar as relevant herein, this section bestows upon employees the right to join or assist employee organizations, or to act individually or in concert for the purpose of establishing or maintaining those matters which are discussable in section 5.

---

5. For an exhaustive discussion and symposium, *see* Doering, *Bargaining and Discussion—Is it a Happy Marriage?* 50 Ind.L.J. 284 (1975).

6. We assume that good or bad faith could be relevant with respect to the appropriate sanctions to be imposed. In this case, the IEERB issued a cease and desist order.

7. The IEERB disagreed with the Hearing Officer on this issue alone.

8. EVSC has submitted an affidavit to the effect that at the hearing on the motion to correct errors, the trial court stated he based on decision on this issue on the grounds of section

7(a)(5). The affidavit additionally states, however, that the trial court was merely affirming the Hearing Officer's conclusion (which was based on section 7(a)(1)). Inasmuch as the trial court's judgment affirmed the Hearing Officer's finding of a violation under section 7(a)(1), we perceive that EVSC has failed to present a colorable issue nor resulting prejudice.

* EVSC's brief substitutes the word 'most' for 'some' which is in the transcript. Such substitution is strongly disapproved by this court.

"The following factors persuade us that the trial court was correct: (1. the ETA was the exclusive representative as defined in section 2(*l*) (2. the evaluation committee was the instrumentality in the drafting and proposal of a discussable matter (3. the ETA was not represented on the evaluation committee and was functionally unaware of the plan's promulgation, and (4. no ETA participation was involved in the appointment of members to the evaluation committee. In such a case, we believe the school employer has interfered with or restrained the rights in section 6(a). Under the circumstances herein, it is sufficient to note that under section 6(a) employees have the right to act in concert for the purpose of establishing or improving discussable matters. EVSC interfered with this right when ETA members were not permitted to act through the ETA in the selection of the evaluation committee which performed a critical function in establishing policy concerning discussable matters.[9]

\*      \*      \*      \*      \*      \*

"As we have held, discussable topics trigger affirmative rights upon school employees and duties upon school employers. In order for such affirmative rights and duties to be given effect, the employer's rights unilaterally to confer and establish policy can not be construed as an *ipso facto* excuse for an otherwise established unfair practice."

While it is true that the evaluation program in the instant case was a discussable working condition and that the ETA (or exclusive representative) cannot be excluded from a committee which is the sole instrumentality in the drafting and proposal of a discussable matter, we must point out that the statute does speak of specific school employer rights as well as duties. It has long been legally recognized that a right is a privilege which may be exercised by its holder at the holder's discretion. A duty is an obligation which must be carried out by the one who is subject to it.

Our statute clearly reserves a right for the school employer in the following unambiguous language:

" . . . nor shall either such obligation prevent the school employer or the superintendent from conferring with any citizen, taxpayer, student, school employee or other person considering the operation of the schools and the school corporation." Ind.Code § 20–7.5–1–2(*o*) (Burns 1975).

Although this statute gives to the school employer the duty to bargain collectively with respect to the enumerated section 4 topics and the duty to "discuss" the enumerated section 5 topics with the exclusive representative, it also gives the right to "confer[ ] with any citizen, taxpayer, student, school employee or other person." This is a legislative recognition of the right of all taxpayers to have some input into the operation of their local school system which is largely supported by local tax money.

Both the "duty to discuss" and the "right to confer" are in the statute and both must be given effect insofar as possible. It is well settled that an interpretation of a statute which does not give effect to all of a statute's provisions must be avoided if an interpretation is possible which would give effect to all of the statute's provisions. *Thompson v. Thompson*, (1972) 259 Ind. 266, 286 N.E.2d 657; *Combs v. Cook* (1958) 238 Ind. 392, 151 N.E.2d 144.

Therefore we hold that nothing in the statute or in this opinion would prohibit school employers from conferring with any persons they wish in order to gather and receive information. Basic matters of educational policy and program content must reflect the concerns and desires of the entire local community and not any one single interest group.

Gathering information concerning such matters is the responsibility of the school employer. Nothing in the statute

---

**9.** EVSC misses the point in asserting that these committees are not 'intended' to displace section 5 obligations because, in this case, the evaluation committee did *in fact* displace such obligations.

prohibits the employer from creating committees to assist it in gathering and receiving information which is needed to help establish or improve any matter of school concern including discussable matters. The committees may be composed of any concerned parents, students, teachers, experts, consultants or other concerned citizens as the school employer deems appropriate. The committees may even be composed entirely of school employees who are not members of the exclusive representative organization as long as the committee is gathering or receiving information which is only a partial input into the final formulation of policy. However, the exclusive representative cannot be excluded from such a committee when such committee is the sole instrumentality in the drafting and proposal of a discussable matter as was true in the instant case.

We find no reversible error in the judgment of the trial court and the judgment should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.