URSULA MATTSON, Plaintiff-Appellant, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)    No. 79-2043

Opinion filed September 29, 1980.

William Pellicore, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Robert R. Retke and Regan D. Ebert, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Ursula Mattson (plaintiff) petitioned for a writ of *mandamus* to compel the city of Chicago and Joseph F. Fitzgerald, Jr., commissioner of the Department of Buildings (defendants), to issue a building permit for the construction of a six-unit apartment building on plaintiff's property. After trial, the court denied the petition. Plaintiff appeals.

Plaintiff owned a five-room brick ranch residence on property zoned R-4, general residence district. Before plaintiff purchased the property, she made a personal check of the zoning. She contemplated ultimate erection of a condominium building on the site so that she could have a unit for herself. On March 23, 1978, plaintiff applied to the Department of Buildings for a permit to construct a seven-unit apartment building. However, the lot area was sufficient for only six units. Plaintiff's contractor testified the application was reduced to six units before it was routed to the various city departments. The contractor also testified the application for the permit was "routed as six units all the time." We note also that

plaintiff's petition for *mandamus* alleged her application pertained to a "six-unit condominium building." Defendants' answer specifically admitted this allegation.

Subsequently, every division of the Department of Buildings approved the plans. The contractor testified the plans were then sent to the permit control desk. He stated, "because of final approval, it was a matter of just picking out [*sic*] the permit." The coordinating architect for the planning bureau of the Department of Buildings testified when the application reaches the permit control desk, processing has been completed, and the next logical step is issuance of the building permit.

On May 3, 1978, plaintiff's contractor obtained a demolition permit. By the end of May, the demolition of plaintiff's house was completed and the land was cleared. On May 10, an ordinance was introduced to change the zoning to R-3. This change, if approved, would allow plaintiff to construct only a two-unit apartment building.

About May 25, plaintiff's contractor returned to the Department of Buildings to pick up the building permit. A member of the staff informed him he would not receive the permit because a zoning change in the area was contemplated. Prior to this time, the contractor had not received any indication the city was intending to withhold issuance of the permit.

On May 19, 1978, plaintiff petitioned for a writ of *mandamus*. On or about July 7, 1978, the city council amended the R-4 zoning to R-3.

Plaintiff contends she acquired a vested right in the R-4 zoning and the building commissioner was bound to issue the building permit as a ministerial duty. Defendants contend plaintiff failed to demonstrate a clear, legal right to relief, and equitable estoppel is not applicable here.

In our opinion, a decision by the Supreme Court of Illinois governs the rights of the parties here. In *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 377 N.E.2d 21, plaintiff's property was initially zoned R-4, single family residence. Plaintiff operated a nursing home thereon as a legal, nonconforming use. Plaintiff applied for rezoning to R-5, general residence. This would enable plaintiff to enlarge and improve the nursing home. To pacify municipal objectors, plaintiff executed a restrictive covenant to use the property only for a "nursing, convalescent, and retirement home" for 25 years. The county commissioners approved a necessary zoning change. The county building department approved the plans and issued a permit for a four-unit prototype retirement building.

Thereafter, plaintiff's architect requested a permit for the whole retirement housing complex. The administrator informed plaintiff it would be obliged to sue for a writ of *mandamus* or receive an opinion from the State's Attorney before a permit would issue. The State's Attorney issued an opinion favorable to plaintiff.

Nearly a year later the permit was refused because of an anticipated change in the comprehensive zoning plan which would change the property to R-6. This would reduce the permitted units from 17.4 to 8 per acre. After hearings, this change went into effect. Plaintiff filed an action for *mandamus*. The circuit court granted the writ. The appellate court reversed. The supreme court affirmed the circuit court.

The supreme court quoted from *People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill. 2d 183, 191, 157 N.E.2d 33, and stated the rule as follows (71 Ill. 2d 510, 522-23):

> " '* * * where there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance, such party has a vested property right and he may complete the construction and use the premises for the purposes originally authorized, irrespective of subsequent zoning or a change in zoning classifications.' "

■■ The supreme court pointed out "the actions of the defendants, * * * encouraged plaintiff, who relied on the probability of the building permit issuing and substantially changed his position." 71 Ill. 2d 510, 524.

We find these principles decisive here. Every division of the Department of Buildings approved the plans and application. Plaintiff obtained a demolition permit and demolished her home worth over $40,000. The demolition cost $1600 and plaintiff's liability for the architect's fee was $2500. We find plaintiff substantially changed her position in reliance upon the probability of the forthcoming permit.

Another authority pertinent here is *Urban Investment & Development Co. v. Graham* (1977), 49 Ill. App. 3d 661, 364 N.E.2d 628. There, plaintiff sought a writ of *mandamus* to compel defendant to approve a subdivision plat. The court held the plat officer had no discretion to refuse to execute a plat but had only powers given to his office by the legislative body which had established it. Thus, the court concluded the officer "may not make any determinations of what standards must be met to allow approval * * *." (49 Ill. App. 3d 661, 664.) The court also stated the plat officer "may not withhold approval of an otherwise correct plat because of the possibility that additional requirements might be added in the future." (49 Ill. App. 3d 661, 665.) This language is particularly applicable to the case before us. Plaintiff here made her application for a building permit and even applied for a demolition permit prior to the introduction to the city council of the proposed new zoning ordinance.

■■ Plaintiff had no advance notice of the proposed zoning amendment. She obtained the demolition permit before the amendatory zoning ordinance was introduced. Plaintiff also demolished her home and incurred expenses in good faith. Consequently, plaintiff has a vested property right

to use her property for the six-unit apartment building despite the change in zoning.

Defendants contend the building commissioner was vested with discretionary authority and therefore his actions were not subject to review or control by *mandamus*. Defendants rely on *Kramer v. City of Chicago* (1978), 58 Ill. App. 3d 592, 374 N.E.2d 932, *appeal denied* (1978), 71 Ill. 2d 609. That case involved a Lakefront Protection Ordinance ordering the chairman of the Chicago Plan Commission to issue an approval of plaintiff's proposed use of the property. The court held plaintiff was not entitled to a writ of *mandamus* because defendants' official duty involved an exercise of discretion and "[w]here the performance of an official duty or act involves the exercise of discretion, the administrative action is not subject to review or control by mandamus." 58 Ill. App. 3d 592, 599.

That situation is not present here. In the instant case, the building commissioner had no discretionary powers regarding final approval of the permit. Pursuant to section 43—4 of the Municipal Code of Chicago, the first step in securing a permit is to present drawings or plans for the construction, erection, or alterations to the commissioner "for examination and approval as to proper use of building and premises and as to compliance in all other respects with the Chicago zoning ordinance * * *." This initial action constitutes the only discretion vested in the commissioner. Plaintiff's plans conformed with regard to this step and the commissioner proceeded to present them to the various divisions. The ordinance describes this as "the submission to the proper official of these departments and bureaus for his examination and approval * * *." The record reflects plaintiff's plans passed each division successfully.

■■ Then the ordinance provides "the same shall be returned to the Commissioner of Buildings where they shall be taken up for examination and approval by the Commissioner of Buildings." At this point the commissioner's duty is ministerial. The only power here delegated to him is issuance of the permit.

■■ Defendants claim no substantial change of position resulted from the demolition of plaintiff's building. Defendants cite *People ex rel. Shell Oil Co. v. Town of Cicero* (1973), 11 Ill. App. 3d 900, 298 N.E.2d 9, for the proposition that the municipality should not be estopped. But, in that case, this court expressly noted demolition of the building by plaintiff was not based on the reasonable probability that a building permit would issue. This probability arises only where the subject site is suitably zoned for the type of building and use contemplated by the owner. (11 Ill. App. 3d 900, 904.) In the case at bar, plaintiff demolished her home specifically to replace it with a building and use for which the site was then zoned. By that time the new building permit had been approved by all city departments and merely awaited final ministerial approval at the permit control

desk. These actions by plaintiff were based on the probability the permit would be issued.

For these reasons the judgment appealed from is reversed, and the cause remanded with directions for issuance of a writ of *mandamus* requiring that a building permit be issued to plaintiff in accordance with the plans submitted.

Judgment reversed and cause remanded with directions.

McGLOON and CAMPBELL, JJ., concur.