**COLUMBUS BOARD OF ZONING APPEALS, Thomas Webb, Jewell Arthur, Timothy Grogg, Steven Zeller, and Lou Marr, individual members of such Board; and Steve Rucker, Appellants–Respondents,**

v.

**Tom WETHERALD, Appellee–Petitioner.**

No. 03A01–9204–CV–122.

Court of Appeals of Indiana,
First District.

Dec. 28, 1992.

Rehearing Denied March 10, 1993.

J. Grant Tucker, Jones Patterson Boll & Tucker, Columbus, for appellants-respondents.

John R. Rumple, Joan Tupin Crites, Sharpnack, Bigley, David & Rumple, Columbus, for appellee-petitioner.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The Columbus Board of Zoning Appeals, its individual members, and Steve Rucker (collectively "BZA") appeal from a judgment reversing the BZA's decision denying applications for zoning variances filed by Tom Wetherald. We reverse and remand.

## ISSUES

We restate and consolidate the issues on appeal as:

·1. Is the instant appeal moot because the BZA failed to obtain a stay pending appeal, and in the interim, Wetherald obtained a building permit, completed improvements, and is currently operating his business on the lot in question in accordance with the trial court's grant of the variances?

2. Did the trial court improperly reverse the BZA's decision and enter its own findings, since the BZA provided no findings of fact to substantiate its decision as required by statute?

## FACTS

Wetherald purchased the lot involved in this appeal ("Lot") to construct a drive-through restaurant ("Restaurant"). The Lot is zoned B–4 under the Columbus Zoning Ordinances ("Ordinances"), which permit the construction of a drive-through restaurant. Record at 48, part 2, p. 29.[1] The Lot consists of approximately 12,000 square feet of property, but only approximately 650 square feet would be useable

---

1. Page 48 of the record consists of two parts, which together form the record of proceedings from the BZA hearing. The pages contained within page 48 are separately numbered.

under the present setback regulations.[2] In early 1991, Wetherald applied for a building permit to make some improvements to the Lot necessary to complete the Restaurant.

The Code Enforcement Officer denied the application and told Wetherald that he first needed to obtain developmental standards variances ("Variances") before receiving a building permit. Wetherald applied for the Variances. These applications requested:

a. To construct a building in front of a setback line (State Street) and to permit parking in front of a setback line of a local street (Illinois Street).

b. To construct a building with parking based on kitchen floor area only.

c. To vary the landscape buffer requirements.

Record at 48, part 2, pp. 42–43, 45–46, and 49–50.

The BZA considered Wetherald's applications ("Applications") at its June 25, 1991 meeting. However, the BZA failed to reach a decisive vote on the Applications, so decision thereon was postponed until the BZA's July 23, 1991 meeting. On July 23, 1991, the BZA denied the Applications, but no written findings of fact were made. Record at 48, part 2, pp. 1–15.

Wetherald filed a petition for writ of certiorari ("Writ") seeking review of the BZA's decision on August 21, 1991. The Writ was granted and following a hearing, the trial court determined that the evidence before the BZA supported the granting of the Applications, and that denial by the BZA was illegal, arbitrary, and contrary to the weight of the probative evidence presented to the BZA. Record at 49–53. The trial court also noted that the BZA had made no findings supporting its decision. Record at 50.

After the trial court's orders approving the Applications and thereby granting the Variances, Wetherald obtained a building permit, constructed the Restaurant, and opened for business. Wetherald has continued operating the Restaurant during the

pendency of this appeal. Other relevant facts will be stated in our discussion of the issues.

## DISCUSSION AND DECISION

*Issue One*

■ Wetherald argues that this appeal is moot because the BZA failed to obtain a stay pending appeal, and in the interim, he obtained a building permit, completed improvements, and is currently operating the Restaurant in accordance with the trial court's grant of the Variances. We disagree.

■ An issue becomes moot when it is no longer live or when the parties lack a legally cognizable interest in the outcome. *Bartholomew County Hospital v. Ryan* (1982), Ind.App., 440 N.E.2d 754, 757, *trans. denied.* Where we are unable to grant effective relief on an issue, the issue is deemed moot. *Id.*

Here, contrary to Wetherald's contention, the appeal is not moot. If relief were granted to the BZA reversing the trial court's grant of the Variances, then the BZA's decision denying the Variances would be reinstated. Wetherald would then be required to bring the Restaurant into compliance with the regular developmental standards, including removing structures already completed. We cannot sanction Wetherald's construction pending appeal as creating mootness; otherwise, those seeking variances for construction purposes could circumvent zoning requirements by simply constructing in accordance with permits issued, although final resolution of the propriety of such variances was still pending on appeal. Wetherald proceeded to build at his own peril prior to a final resolution of the variance issues. *See Petrosky v. Zoning Hearing Board* (1979), 485 Pa. 501, 507, 402 A.2d 1385, 1388 (factor to consider in determining whether permit holder has vested right because of detrimental reliance by making improvements on property is that time period in which issuance of permit could have been appeal-

---

2. The Lot's configuration is peculiar and its placement between a local street and a main arterial way results in the small area available for development under the current setback standards. *See* Record at 48, part 2, pp. 1–2 and 17.

ed had passed when improvements begun); *see also Bird v. Delaware Muncie Metropolitan Plan Commission* (1981), Ind. App., 416 N.E.2d 482, 490 (severe remedy of removal of assembled structures on property may be mandated in some circumstances involving zoning ordinances); *B. & G. Construction Corp. v. Board of Appeals* (1955), 309 N.Y. 730, 731–32, 128 N.E.2d 423, 424 (construction company not entitled to permit to continue operations where harmful to public merely because it invested in facility under valid permit issued by municipality); *cf. Mattson v. Chicago* (1980), 89 Ill.App.3d 378, 381, 44 Ill. Dec. 636, 638, 411 N.E.2d 1002, 1004 (where landowner substantially changed position in good faith in justifiable reliance on probability of building permit's issuance, vested right acquired to use property for desired purpose, although zoning classifications subsequently introduced); *Peru v. Querciagrossa* (1979), 73 Ill.App.3d 1040, 1042, 30 Ill.Dec. 123, 125, 392 N.E.2d 778, 780 (city estopped from enjoining landowners' construction where building permit issued and advice given by building inspector later proved erroneous; landowners justified in relying on express instructions from building inspector and receipt of permit and made substantial construction expenditures in reliance thereon). Thus, the appeal is not moot.[3]

*Issue Two*

■■■ The BZA contends that the trial court improperly reversed its decision and entered its own findings, since the BZA provided no findings of fact to substantiate its decision as required by statute and the evidence on Wetherald's compliance with the four criteria needed to sustain his burden on the Variances was not uncontradict-

ed. We agree and find that reversal and remand are mandated.

■■■ In examining a decision of a county board of zoning appeals to determine whether it was incorrect as a matter of law, a trial court does not conduct a trial *de novo* and does not substitute its decision for that of the board; our review of a trial court's ruling on review of such a decision is governed by the same considerations. *McBride v. Board of Zoning Appeals* (1991), Ind.App., 579 N.E.2d 1312, 1315. Unless the BZA's decision was illegal, it must be upheld; in essence, an abuse of discretion standard applies. *Id.* We cannot reweigh evidence or substitute our discretion for that of the BZA. *Id.* We are governed by the presumption that an agency's decision is correct in view of its expertise. *Id.*

■■■ For reasons that exist independently of statute, boards of zoning appeals are required to set out findings of fact which support their determinations to make possible an adequate judicial review of administrative decisions. *Id.* at 1316. Moreover, our statutes require that the BZA make written findings of fact to support its determinations to make possible an intelligent judicial review of the administrative decision without speculations as to its factual basis. *Habig v. Harker* (1983), Ind. App., 447 N.E.2d 1114, 1116; IND.CODE § 36–7–4–915.[4] The proper action of the trial court is to remand for the entry of findings where the agency has failed to do so. *Habig*, 447 N.E.2d at 1117.

Here, the record of the BZA proceedings does not contain any findings of fact supporting the BZA's decision to deny the Applications. *See* Record at 48. Such findings would not be necessary, however, if

---

**3.** Additionally, Wetherald's reliance on Ind.Trial Rule 61(d)(i) [sic] and Ind.Appellate Rule 6(B) is misplaced. As the BZA points out, these rules do not mandate that the BZA seek an immediate appeal of the denial of the requested stay to prevent preclusion of this appeal because of mootness.

Moreover, the sole case Wetherald cites to support this issue is inapposite to the situation here. *See Letz Manufacturing Co. v. Public Service Commission of Indiana* (1936), 210 Ind. 467, 471, 4 N.E.2d 194, 196 (court declined to

apply mootness doctrine because constitutionality of certain acts involved).

**4.** I.C. § 36–7–4–915 reads in full:

"Board of zoning appeals; minutes and records Sec. 915. The board of zoning appeals shall keep minutes of its proceedings and record the vote on all actions taken. All minutes and records shall be filed in the office of the board and are public records. The board shall in all cases heard by it make written findings of fact."

Wetherald had met his burden of showing the four criteria required for the Variances and such evidence were uncontradicted. *See Maxey v. Board of Zoning Appeals* (1985), Ind.App., 480 N.E.2d 589, 592, *trans. denied* (burden on petitioner for variance to show that each prerequisite met, and evidence supporting each must be "such that no reasonable man could fail to accept that prerequisite as proved"). Our perusal of the record shows that contradictory evidence was presented on one of the criteria, making a reversal and remand for appropriate findings necessary.

To prevail on his Applications, Wetherald was required to show four criteria:

1. the approval will not be injurious to the public health, safety, and general welfare of the community;

2. the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;

3. the strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property; and,

4. the variance requested is the minimum necessary and does not correct a hardship caused by the owner, previous or present, of the property.

Columbus City Code § 35–328; *see also* IND.CODE § 36–7–4–918.5. The BZA essentially concedes that Wetherald met his burden on the latter three criteria. *See* Appellant's Brief at 13–14; Reply Brief at 13. Thus, the pivotal issue is whether Wetherald showed by uncontradicted evidence that his Applications met the first criterion.

The record of the BZA proceedings shows that several of the BZA members, including a city engineer, expressed reservations about the Variances because of traffic safety concerns, which are encompassed in the first criterion. *See* Record at 48, part 2, pp. 8–9, 20, 23–24, 26, 29–31. Although many of these comments may seem peripheral in the context of the entire discussion, they do demonstrate that the evidence which Wetherald presented was contradicted. Because the evidence was contradicted, the trial court could not enter findings which conflicted with the BZA's decision, since agency decisions are afforded great weight by virtue of an agency's inherent expertise in its given area. *See McBride*, 579 N.E.2d at 1315; *Boffo v. Boone County Board of Zoning Appeals* (1981), Ind.App., 421 N.E.2d 1119, 1125 (in order to upset BZA's determination when it has denied variance, reviewing court must find, after resolving all doubts in evidence in favor of BZA's decision, that each statutory prerequisite has been established as matter of law). Thus, the trial court exceeded its powers of review when it entered findings; rather, the proper action would have been to remand to the BZA for the entry of the required findings. *See Habig*, 447 N.E.2d at 1117. We similarly may not now review the BZA's decision without findings on which its decision rests.

We note that Wetherald's reliance on *Town of Merrillville Board of Zoning Appeals v. Public Storage, Inc.* (1991), Ind. App., 568 N.E.2d 1092, *trans. denied*, is misplaced. In *Public Storage*, the BZA entered findings four days late, and we held that the late entry was harmless error. *Id.* at 1093, n. 2. Here, however, the BZA did not enter its findings late, but failed to make any findings at all. Therefore, the harmless error analysis in *Public Storage* is inapplicable to Wetherald's case.[5]

Because we cannot say that the evidence was without contradiction and Wetherald satisfactorily proved all of the criteria, we reverse and remand to the trial court to remand to the BZA for the entry of findings supporting its denial of the Applications to allow for proper review, and for further proceedings in accordance with this opinion. If, as Wetherald urges, there is

---

5. Additionally, we note that we cautioned in *Public Storage* that the finding of harmless error was not to be construed as condoning the late entry of findings by boards of zoning appeals; rather, the timely entry of findings by boards of zoning appeals is a statutory mandate with which all boards of zoning appeals must comply. *See Public Storage*, 568 N.E.2d at 1093, n. 2.

insufficient evidence in the record to support the BZA's denial of the Applications, its findings will be unsupported by the evidence, and the trial court may on certiorari again reverse the BZA's decisions; our statutes demand, however, that the appropriate statutory procedure be followed and findings be entered. *See* I.C. § 36–7–4–915.

Reversed and remanded.

BAKER, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent. The record is devoid of substantial evidence to support the board's determination that granting the variance would be injurious to the public health, safety or general welfare.

IND.CODE 36–7–4–1009 prohibits the trial court from conducting a trial de novo upon a writ of certiorari from a board of zoning appeals determination. However, when appealing from an adverse decision at the trial court level, the board bears the burden of persuading this court that the board's determination was supported by substantial evidence and was thus not clearly erroneous. *Town of Beverly Shores v. Bagnall* (1992), Ind., 590 N.E.2d 1059, 1062.

The board claims that its denial of a variance—unaccompanied by findings of fact—is predicated upon Wetherald's failure to establish that: "the approval will not be injurious to the public health, safety, and general welfare of the community." At the public hearings, board members expressed "concern" about traffic congestion at the site. Record, p. 48, Minutes, pp. 19–20, 23. This is so despite the Board's admission that Wetherald complied with the local requirement of 10 vehicle "stacking positions" to keep customers ordering or receiving food on the parking lot and off the street. Minutes, p. 16. It is uncontroverted that Wetherald thereby complied

with the traffic safety standard established by the City of Columbus.

The "evidence" in support of the board's determination as to public safety consists of testimony by Steve Rucker, City of Columbus engineer:

"Our *only concern* is that kind of development on such a small site. Uh, I think it's, uh, a problem we get very cramped site plan and, and use that *tends* to generate large volumes of traffic, as a drive thru restaurant does. And the memo didn't intend to say that kind of cars were going to be there every hour, uh, use some comparisons to show other kinds of uses. The drive thru restaurant does *tend* to generate a lot of cars." (emphasis added) [1]

Minutes, p. 6.

"If we have one more conflict and the *possibilities* of cars colliding." (emphasis added)

Minutes, p. 9.

Although there exists conjecture and speculation as to "possibilities" and "tendencies," there is no substantial evidence of a safety hazard specifically related to the location under consideration. However, the record discloses uncontroverted evidence of the public health and safety benefit flowing from Wetherald's acquisition and use of the site: the drive-through operation replaced a worthless, abandoned, roach and rodent-infested structure. Minutes, p. 11. Moreover, the owner of the adjacent property (a doughnut shop) testified that his traffic generation peak occurred in the early morning, in contrast to the peak traffic hours at Wetherald's hamburger establishment. Minutes, pp. 8, 11.

I would affirm the decision of the trial court setting aside the board's determination as illegal, arbitrary and contrary to the weight of the probative evidence.

---

1. The memo referenced by Rucker discloses "trip generation data" from the Institute of Traffic Engineers, estimating an "average" of 78.8 trips during the peak hour for a drive-through restaurant. Minutes, p. 26.