**BOARD OF SCHOOL TRUSTEES OF SCHOOL TOWN OF HIGHLAND, Appellant–Petitioner Below,**

v.

**HIGHLAND CLASSROOM TEACHERS ASSOCIATION, Linda S. Young, Individually and in her capacity as President of Highland Classroom Teachers Association, and Indiana Education Employment Relations Board, Appellees–Respondents Below.**

No. 45A03–9304–CV–144.

Court of Appeals of Indiana, Third District.

Nov. 15, 1993.

Steven R. Crist, Marilyn Reed Holscher, Singleton, Crist, Patterson, Austgen & Lyman, Munster, for appellant.

David J. Emmert, Lisa F. Tanselle, Indianapolis, for amicus curiae Indiana School Bd. Assoc.

Richard J. Darko, Susan P. Stuart, Lowe Gray Steele & Hoffman, Indianapolis, Samuel J. Goodman, Goodman Ball & Van Bokkelen, Highland, for appellees.

STATON, Judge.

The Board of Trustees of the School Town of Highland ("School Board") appeals the trial court's judgment in favor of the Highland Classroom Teachers Association ("Teachers Association"), the exclusive representative for the teachers in that school corporation. The School Board presents six issues for our review which we consolidate into one and restate as· follows: whether the trial court erred in concluding that the School Board committed an unfair practice when it formed a committee to draft and propose revisions to the school curriculum.

We affirm.

This action was initiated when the Teachers Association filed an unfair practice complaint with the Indiana Education Employment Relations Board ("IEERB"). The complaint alleged that the School Board had failed in its duty to discuss, as required by the Certified Education Employee Bar-

gaining Act ("CEEBA"),[1] when it created a committee ("computer committee") to review and propose revisions to the elementary computer curriculum.[2] The computer committee consisted of several school administrators and eight teachers. Despite the Teachers Association's assertion of its right to appoint the teachers that would serve on the computer committee, all of the teachers thereon were selected by the administration.

The School Board contends that the Teachers Association would have been afforded its mandated opportunity to discuss when, in accordance with the school's normal procedure, the computer committee's final proposal was presented to a Discussion Committee for further review before implementation. This Discussion Committee would have consisted of individuals appointed by the Teachers Association and an administrator. The hearing examiner appointed by IEERB disagreed with the School Board and found that the computer committee violated CEEBA because it denied the Teachers Association its discussion rights.

"Discuss" is defined in IND.CODE 20–7.5–1–2(o) (Supp.1992) as follows:

the performance of the mutual obligation of the school corporation through its superintendent and the exclusive representative to meet at reasonable times to discuss, to provide meaningful input, to exchange points of view, with respect to items enumerated in section 5 of this chapter.... Neither the obligation to bargain collectively nor to discuss any matter shall prevent ... the school employer or the superintendent from conferring with any citizen, taxpayer, student, school employee, or other person considering the operation of the schools and the school corporation.

The Teachers Association contends it has been denied its right to provide meaningful input as required by CEEBA because it is not allowed to appoint members to the com-

puter committee. The School Board argues there is no violation of CEEBA because the Teachers Association is able to appoint members to the Discussion Committee where they will be able to provide input when presented with the computer committee's proposal.

■ The parties agree that our supreme court's decision in *Evansville–Vanderburgh School Corp. v. Roberts* (1980), 273 Ind. 449, 405 N.E.2d 895 is controlling in the case at bar. In *Evansville–Vanderburgh*, the Teachers Association challenged the implementation of a teacher evaluation plan where there was no prior discussion with the teachers' exclusive representative. In holding that the school corporation committed an unfair practice, the supreme court opined that:

[N]othing in [CEEBA] or in this opinion would prohibit school employers from conferring with any persons they wish in order to gather and receive information. Basic matters of educational policy and program content must reflect the concerns and desires of the entire local community and not any one single interest group....

.... Nothing in [CEEBA] prohibits the employer from creating committees to assist it in gathering and receiving information which is needed to help establish or improve any matter of school concern including discussable matters. The committees may be composed of any concerned parents, students, teachers, experts, consultants or other concerned citizens as the school employer deems appropriate. The committees may even be composed entirely of school employees who are not members of the exclusive representative organization as long as the committee is gathering or receiving information which is only a partial input into the final formulation of policy. *However, the exclusive representative cannot be excluded from such a committee when such committee is the sole*

---

1. IND.CODE 20–7.5–1–1 et seq.

2. IND.CODE 20–7.5–1–3 (1988) and IND.CODE 20–7.5–1–5 (Supp.1992) impose on school em-

ployers the obligation to discuss the development and revision of school curriculum with the exclusive representative of the teachers.

*instrumentality in the drafting and proposing of a discussable matter as was true in the instant case.*

*Id.,* at 901–02 (emphasis added). Thus, the School Board in the case at bar committed an unfair practice if the computer committee is the sole instrumentality in the drafting and proposing of the computer curriculum.

In its findings of fact and conclusions of law, the IEERB stated in pertinent part:

### FINDINGS AND CONCLUSIONS OF FACT

\*    \*    \*    \*    \*    \*

18. The purpose of the [computer committee] was to review and revise the elementary computer curriculum and to produce a written proposed curriculum for submission to administration, discussion, and recommendation to the Board, and implementation.

\*    \*    \*    \*    \*    \*

22. The [computer committee] has or will engage in the following complex and comprehensive tasks:

1. gather and receive information from other school systems in Indiana regarding elementary computer curriculum;

2. review the elementary computer curricula of other Indiana school systems;

3. inventory computer software currently available in each elementary school within the School Town of Highland.

4. compile a list of computer software currently available in each elementary school within the local school system;

5. examine the current elementary computer curriculum and actual practice in the elementary classrooms within the School Town of Highland;

6. draft a revised philosophy and create new overarching goals for the elementary computer curriculum;

7. assess whether the current elementary computer curriculum reflects the revised philosophy and new overarching goals completed in Step 6 above;

8. identify changes that need to be made in the current elementary computer curriculum;

9. write a final report, revised elementary computer curriculum that includes some of the old curriculum and some new curriculum;

10. regularly submit interim reports on the Committee's activities to [the Elementary Coordinator/Principal and Assistant Superintendent of Curriculum and Finance] throughout this process;

11. submit a final report consisting of a written revised and recommended elementary computer curriculum to [the Assistant Superintendent of Curriculum and Finance]; and

12. if instructed by the administration, review suggested changes in the final report (which might be made by [the Elementary Coordinator/Principal] or [the Assistant Superintendent for Curriculum and Finance] after administrative review; by the [Teachers] Association or administration after Discussion; or by the School Board after review and recommendation for adoption) and make any changes deemed necessary by administration.

23. At the time of the hearing, the [computer committee] had completed steps 1 through 8 and portions of step 10 stated above in Finding of Fact 22 and was preparing to complete steps 9, 10 and 11 in July 1991.

24. The practice within the School Town of Highland is for a Committee to submit only its final report for discussion with the [Teachers] Association. The [computer committee] intended to submit only its final written work product for discussion with the [Teachers] Association.

\*    \*    \*    \*    \*    \*

### CONCLUSIONS OF LAW

\*    \*    \*    \*    \*    \*

2. The purposes of the [computer committee] included: curriculum develop-

ment and revision, including producing written goals and objectives, for recommendation to the School Board for adoption. The nature of the [computer committee's] work, as detailed in Findings and Conclusions of Fact 22, was both complex and comprehensive.

3. Because of the purposes and the nature of the work completed by the [computer committee], meaningful input or exchange of points of view was not reasonably likely to occur either outside the [computer committee] or after the [computer committee] had completed its work by presenting a final report to the [Discussion Committee].

4. As a result, the [Teachers] Association had the exclusive right to designate, select and effectively recommend for appointment all of the school employees that serve on the [computer committee] as authorized agents of the [Teachers] Association engaging in discussion pursuant to the Act.

5. The School Board refused to permit the [Teachers] Association to exercise its right to designate, select, and effectively recommend for appointment the school employees that served on the Elementary Computer Curriculum.

\* \* \* \* \* \*

### RECOMMENDED ORDER

1. That the School Board CEASE and DESIST, now and in the future, from refusing to discuss curriculum development and revision with the exclusive representative by forming committees whose purposes and tasks require that discussion pursuant to Section 5 of the Act take place within the Committee, and which exclude the exclusive representative.

\* \* \* \* \* \*

Record, at 952–68.

■ Judicial review of an administrative decision· is limited to: whether the agency possessed jurisdiction over the subject matter; whether the decision was made pursuant to proper procedures;

whether the decision was based upon substantial evidence; whether the decision was arbitrary or capricious; and whether the decision was in violation of any constitutional, statutory or legal principle. *Bd. of Tax Com'rs v. Jewell Grain Co.* (1990), Ind., 556 N.E.2d 920, 921. This court may not reweigh conflicting evidence, but it must affirm the board's or agency's decision if there is any substantial evidence in the record to support it. *Evansville–Vanderburgh, supra,* at 897.

■ The record reveals that the computer committee met nine times over a two month period. By contrast, the Discussion Committee typically meets only once to consider the proposals of such special committees. Too, the Teachers Association is given only the final report of the special committee to review, sometimes on the same day the Discussion Committee is to meet. The School Board's representative on the Discussion Committee described the proceedings at the Discussion Committee meetings as follows:

[The Assistant Superintendent for Curriculum and Finance] gives me whatever documents there are; I make copies for the discussion group and take it normally on the day of discussion.

If it's a rather lengthy document, I work with the chair, [a representative of the Teachers Association], and give him a copy so that he can review it prior to the day of discussion.

When we get to discussion, I put together an agenda that the chair and I— I've called him and asked him for any components to the agenda that he wants to add, take the documents, and we work through them one by one, pass out the documents to the people who are there, *try to go through it minimally.*

I usually allow them time to read the document and then I ask for their responses, or if they have questions or any input as to anything that they see in front of them.

Record, at 519–20 (emphasis added).

From this evidence, it was reasonable for the IEERB to conclude that the Discussion

**1084**

Committee did not have an opportunity to provide meaningful input into the development and revision of the computer curriculum.

The School Board argues that the IEERB's decision impermissibly shifts to the School Board the burden of proving that no unfair practice occurred. We do not agree. The evidence discussed above is sufficient to meet the Teachers Association's burden of persuasion that the computer committee was the sole instrumentality in the drafting and proposing of curriculum revisions.

Finally, the School Board contends that the IEERB's decision creates a new right in the Teachers Association to appoint all of the school employee members serving on committees that discuss the topics enumerated in IC 20–7.5–1–5. Whether such a right should be granted to the Teachers Association is not before us today as the IEERB's decision merely requires that the Teachers Association be permitted to appoint some of the members named to the computer committee.

For the reasons stated above, we find that the trial court committed no reversible error here.

Affirmed.

GARRARD and NAJAM, JJ., concur.