**MARION TEACHERS ASSOCIATION and William C. Fields, individually and in his capacity as President of the Marion Teachers Association, and the Indiana Education Employment Relations Board, Appellants–Defendants.**

**v.**

**BOARD OF SCHOOL TRUSTEES OF MARION COMMUNITY SCHOOL CORPORATION, Appellee–Plaintiffs.**

No. 27A02–9410–CV–636.

Court of Appeals of Indiana,
First District.

Nov. 29, 1994.

Richard J. Darko, Mary Jane LaPointe, Lowe Gray Steele & Hoffman, Indianapolis, Pamela Carter, Atty. Gen., of Indiana, Beth H. Henkel, Deputy Atty. Gen., Indianapolis, for appellants.

Steven R. Crist, Marilyn R. Holscher, Singleton, Crist, Patterson, Austgen & Lyman, Munster, for appellee.

Lisa F. Tanselle, David J. Emmert, Indianapolis, for amicus curiae.

### OPINION

ROBERTSON, Judge.

The Marion Teachers Association, its president, William C. Fields [Association/Exclusive Representative], and the Indiana Education Employment Relations Board [IEERB] appeal the trial court's decision on judicial review which reversed the decision and order of the IEERB that had been entered in favor of the Association/Exclusive Representative and against Plaintiff–Appellee Board of School Trustees of Marion Community School Corporation [School Board]. The sole issue, which requires that we reverse, may be restated as:

Whether the Association as the Exclusive Representative of member teachers has the exclusive right to appoint member teachers to committees which serve as the sole instrumentalities for the discussion of matters governed by Section 5 of the Collective Bargaining Act?

The dispositive facts are not disputed. In the fall of 1990, the administration of the Marion School Corporation [Corporation] established subcommittees to gather and receive information regarding new social studies textbooks to be considered for adoption. The work of the subcommittees was to be presented to a steering committee which was to make the final recommendation to the School Board regarding textbook selection. The purpose of the steering committee was to "formulate recommendations that go to the School Board without the matter first going to formal discussion with the [Teachers] Association."

The Association/Exclusive Representative was permitted to appoint twelve teachers to the steering committee. The Corporation appointed three member teachers to the committee without the consent of the Teachers Association. One of these member teachers had written the Association/Exclusive Representative to request an appointment to the steering committee, but the Association/Exclusive Representative did not appoint her. However, the Corporation did appoint this teacher to the steering committee. The Association/Exclusive Representative has consistently maintained that this teacher, although a member of Association, was a vocal opponent of the views held by the Association.

The steering committee ultimately consisted of fifteen teachers who were voting members (twelve appointed by the Association/Exclusive Representative and three appointed by the Corporation), twelve parents who were also voting members, and eight Corporation administrators who were not voting members. The steering committee made a final proposal and recommendation regarding the selection of social studies textbooks which was approved by the School Board.

The Association/Exclusive Representative filed a complaint with the IEERB alleging the Corporation had committed an unfair labor practice by not permitting the Association/Exclusive Representative to exercise its right to make all the member teacher appointments to the steering committee. The IEERB Hearing Examiner found in favor of the Corporation. The Association/Exclusive Representative then filed its Notice of Intent to File Exceptions to the Hearing Examiner's report. The matter was fully briefed by both sides and oral arguments were held

before the full IEERB. The IEERB rejected the Hearing Examiner's decision and ordered the Corporation to cease and desist from denying the Association/Exclusive Representative the opportunity to appoint all member teachers who serve on committees which are sole instrumentalities for the discussion of Section 5 matters, including the selection of textbooks.

The Corporation then sought judicial review in the trial court. The trial court reversed the decision of the IEERB and this appeal ensued.

## DECISION

■■■ The judicial review of an administrative decision is limited to: whether the agency possessed jurisdiction over the subject matter; whether the decision was made pursuant to proper procedures; whether the decision was arbitrary or capricious; and whether the decision was in violation of any constitutional, statutory or legal principle. *Board of School Trustees v. Highland Classroom Teachers Association* (1993), Ind.App., 623 N.E.2d 1079, *trans. denied.* The court on judicial review of an agency decision is governed by the presumption that the agency's decision is correct in view of its expertise. *Columbus Board of Zoning Appeals v. Wetherald* (1992), Ind.App., 605 N.E.2d 208, *trans. denied.* The interpretation given a statute by an agency charged with the duty of enforcing the statute is entitled to great weight; however, an erroneous statutory interpretation is entitled to no weight. *Peabody Coal Co. v. Indiana Department of Natural Resources* (1994), Ind.App., 629 N.E.2d 925, *trans. pending.* The party challenging the administrative order bears the burden of showing that the agency's action was erroneous. *Indiana Department of En-*

*vironmental Management v. Conard* (1993), Ind., 614 N.E.2d 916.

Indiana Code 20–7.5–1–5 (defining Section 5 matters) reads, in pertinent part, as follows:

> (a) *A school employer [Corporation] shall discuss with the exclusive representative* of certificated employees ... the following matters:
> (1) Working conditions, ...
> (2) Curriculum development and revision.
> (3) *textbook selection.*
> (4) Teaching methods.
> (5) Hiring, promotion, demotion, transfer, assignment, and retention of certificated employees, ...
> (6) Student discipline.
> (7) Expulsion or supervision of students.
> (8) Pupil-teacher ratio.
> (9) Class size or budget appropriations.

(Emphasis Added). There is no dispute that the process of selecting the social studies textbooks was a Section 5 matter subject to mandatory discussion between the Corporation and the Association/Exclusive Representative. "Discuss" is defined under the Act as:

> the performance of the *mutual obligation of the school corporation through its superintendent and the exclusive representative* to meet at reasonable times to discuss, to provide meaningful input, to exchange points of view, with respect to [Section 5 matters].... the obligation ... to discuss ... shall [not] prevent the school employer or the superintendent from conferring with any citizen, taxpayer, student, school employee, or other person ...

I.C. 20–7.5–1–2(*o*) [1]. (Emphasis added)

---

**1.** Other statutes stand *in pari materia* with the statutes discussed above. Indiana Code 20–10.1–9–21 provides:

> The superintendent shall be responsible for the establishment of procedures for textbook adoption. The procedures must include the involvement of teachers and parents on an advisory committee for the preparation of recommendations for textbook adoptions. The majority of the members of the advisory committee must be teachers, and not less than forty percent (40%) of the committee must be parents. These recommendations shall be submitted to the superintendent in accordance with the established procedures in the local school corporation.

Indiana Code 20–7.5–1–6(a) provides:

> School employees shall have the right to form, join, or assist employee organizations, to participate in collective bargaining with school employers through representatives of their own choosing, and to engage in other activities, individually or in concert for the purpose of establishing, maintaining, or improving salaries, wages, hours, salary and wage related fringe benefits, and other matters as defined in [Section 5].

We have found neither of these statutes to have been helpful in resolving the issue involved in the present case.

In *Evansville–Vanderburgh School Corporation v. Roberts* (1980), 273 Ind. 449, 405 N.E.2d 895; our supreme court held that a teacher's association, functioning as the exclusive representative of member teachers, must be permitted to appoint *at least some of the member teachers* to a committee serving as the sole instrumentality in the discussion of a Section 5 matter. In the present case, the parties agree that the steering committee appointed to make the final recommendation regarding the selection of social studies textbooks was the sole instrumentality for the discussion of a Section 5 matter.

In *Highland Teachers*, 623 N.E.2d 1079, we affirmed the decision of the IEERB that the teachers association/exclusive representative must be permitted to appoint at least some of the member teachers to a committee serving as the sole instrumentality for discussion of a Section 5 matter. In the present case, the trial court relied on *Highland* in deciding that the Association/Exclusive Representative did not have the exclusive right to appoint all the member teachers to the steering committee. However, the *Highland* court expressly declined to decide this issue, noting:

> Finally, the School Board contends that the IEERB's decision creates a new right[2] in the Teachers Association to appoint all of the school employee members serving on committees that discuss the topics enumerated in IC 20–7.5–1–5. Whether such a right should be granted to the Teachers Association is not before us today as the IEERB's decision merely requires that the Teachers Association be permitted to appoint some of the members named to [such a committee].

623 N.E.2d at 1084. Thus, in the present case, the trial court's reliance on *Highland* in reversing the decision of the IEERB was erroneous.

The IEERB has consistently interpreted the relevant statutes as conferring upon a teachers association serving as the exclusive representative the exclusive right to appoint all member teachers to committees serving as the sole instrumentality for the discussion of Section 5 matters. In *Maconaquah Community Schools* (1979), 1979 IEERB Ann. Rep. 348, the IEERB held that the school corporation committed an unfair labor practice by unilaterally appointing member teachers to serve on a committee involved in the selection of textbooks, holding:

> The harmony in labor relations sought to be achieved by the Act is certainly attainable. The school corporation merely needs to permit the exclusive representative to have *the exclusive right* to appoint teacher members to school corporation meetings which make recommendations on matters which are mandatory subjects of discussion [under Section 5].

*Id.* at 352. (Emphasis added).

Similarly, in *Washington Township* (1980), 1980 IEERB Ann.Rep. 856; *affirmed on rehearing*, 1980 IEERB Ann.Rep. at 877, the IEERB held:

> just as each side [corporation and teachers association] is not permitted to dictate to the other side who any of their bargaining team members might be, this should also be true in the discussion function as well. This safeguard for the discussion process is just as necessary as it is in the bargaining process.... In the case at bar since the discussion function is carried by the committee which is the sole instrumentality in the drafting and proposal of a Section 5 item, the exclusive representative should be permitted to appoint *all* bargaining unit members serving on said committee to be able to carry through with its discussion obligation.

*Id.* at 880 (Emphasis in original).

In *Marion Community Schools* (1989), 1989 IEERB Ann.Rep. 56, the IEERB noted that:

> The principle underpinning all of these IEERB cases decided after [*Evansville–Vanderburgh*, 405 N.E.2d 895] is that discussion will take place in one of two ways: 1.) the exclusive representative's discussion team will discuss the matter with the

2. The argument of the school board in *Highland* was misleading as there was no "new right" involved. As will be discussed below, the IEERB has consistently held, since at least 1979, that teacher associations serving as the exclusive representative of member teachers have had the exclusive right to appoint member teachers to committees which serve as the sole instrumentalities for the discussion of Section 5 matters.

School Board's discussion team or 2.) a sole instrumentality whose teacher members are all appointed by the exclusive representative will develop the matter.

*Id.* at 59. In the compliance officer's report on the *Marion Community Schools* case, published at 1989 IEERB Ann.Rep. 220, the IEERB reiterated:

> In recent years, this Board has devoted more time to the issue of committee appointments than any other issue. The case before us now actually presents no new issue for our determination. Nevertheless, claims of confusion and disregard of Indiana Supreme Court precedent lead us to write our own opinion in this case to clarify our position.
>
> *We believe an exclusive representative should choose all bargaining unit members who serve on committees that are the sole instrumentalities in the drafting and proposal of discussable matters.*

*Id.* at 235 (Emphasis in original).

In *School Town of Munster* (1991), 1991 IEERB Ann.Rep. 93, the issue was the same as the one involved in the present case, whether the teachers association/exclusive representative had the right to select for appointment all member school employees to a textbook selection committee. The IEERB found for the teachers association/exclusive representative explaining:

> IEERB case law preceding and following the Supreme Court's *Evansville–Vanderburgh* [405 N.E.2d 895] decision establishes that if a committee will be [the] sole instrumentality [in the discussion of a Section 5 matter], then the exclusive representative has the right to select ... all bargaining unit members for appointment.

*Id.* at 101.

As noted above, administrative agencies, such as the IEERB, are entitled to deference in their interpretation of the statutes under which they operate. *Peabody Coal,* 629 N.E.2d 925. Our supreme court has summarized the doctrine of legislative acquiescence as follows:

> We have consistently recognized that a long and adhered to administrative interpretation dating from the legislative enactment, with no subsequent change having

been made in the statute involved, raises a presumption of legislative acquiescence which is strongly persuasive upon the courts.

*Indiana Department of Revenue v. Glendale–Glenbrook Associates* (1981), Ind., 429 N.E.2d 217, 219.

■ The doctrine of legislative acquiescence is clearly applicable to the present case. We hold the IEERB's interpretation of I.C. 20–7.5–1–5, which reads "[a] school employer [corporation] shall discuss with the exclusive representative," as conferring upon the exclusive representative the exclusive right to appoint member teachers to committees serving as the sole instrumentalities for the discussion of Section 5 matters, to be reasonable. Moreover, we find merit in Association/Exclusive Representative's argument to the effect that the Corporation's ability to appoint member teachers to such committees severely undermines (by stacking the deck) the ability of the exclusive representative to perform its right and obligation to discuss Section 5 matters with school corporation representatives. Therefore, we defer to the IEERB's interpretation of the statutes involved and reverse and remand with instructions that the trial court reinstate the decision and order of the IEERB.

Judgment reversed.

NAJAM, J., concurs.

GARRARD, J., dissents with separate opinion.

GARRARD, Judge, dissenting.

I agree with the hearing examiner and the trial court judge and, therefore, I respectfully dissent.

IC 20–10.1–9–21, set forth in footnote 2, provides for the textbook advisory committee. In *Evansville–Vanderburgh School Corp. v. Roberts* (1980) Ind., 273 Ind. 449, 405 N.E.2d 895 our supreme court held that the exclusive representative of member teachers must be permitted to appoint at least some of the teachers to the committee.

On the other hand, textbook selection is not a mandatory subject of bargaining. It is an item for discussion only. I totally disagree with the majority's characterization

that permitting the school corporation to appoint other teachers to the committee results in any deck stacking. The exclusive representative is certainly entitled to input and participation, and it can accomplish that with one member on the committee or all the teacher members or some number in between. It is the representative's viewpoint that is being voiced, not that of the individual members it appoints.

I would therefore find that the IEERB has exceeded its statutory authority in its interpretation and that the school corporation committed no unfair labor practice. I would affirm.